399 P.2d 191

The STATE of Arizona, Appellee,

v.

Charles Joseph CARTER, Appellant.*

No. ICA–CR 5.

Court of Appeals of Arizona.

Feb. 24, 1965.

* This appeal was filed with the Arizona Supreme Court and assigned that Court's Number 1457. The matter was referred to this Court pursuant to Section 12–120. 23 A.R.S.

Robert W. Pickrell, Former Atty. Gen., by Stirley Newell, Asst. Atty. Gen., Darrell F. Smith, Atty. Gen., Allen L. Feinstein, Phoenix, of counsel, for appellee.

Sydney Block, Phoenix, for appellant.

DONOFRIO, Judge.

Defendant appeals from a conviction of two counts of Burglary second degree, two counts of Burglary, first degree, and four counts of Grand Theft. The Court imposed sentences totalling a term of not less than 32 years nor more than 40 years in the State Prison. The trial was before the Honorable R. C. Stanford, Jr., Judge, and lasted seven days. The defendant does not attack the sufficiency or weight of the evidence to support the judgment or the sentence imposed by the Court. There-

fore we deem it unnecessary to burden the opinion with a long statement as the pertinent facts will appear as the assignments of error are considered.

The evidence indicates that the defendant would wait around a motel and obtain keys left by persons checking out of their rooms and at a later date when again occupied he would use the keys to enter and burglarize the rooms. Sometimes he would do this during the nighttime while the occupants were asleep in the room. He also obtained other keys for entry to premises by devious means and would later commit thefts of properties from these premises. The Grand Jury returned an indictment charging him with the eight counts of which he was convicted.

This Appeal is based on the error of the Court in denying a motion for new trial. The motion was based on the following grounds; that the County Attorney was guilty of misconduct; that the Court erred in decisions of law, and that the Court misdirected the Jury on matters of law.

We first consider the assignment of error that the County Attorney was guilty of misconduct. Defendant claims the County Attorney improperly argued to the Jury in his final summation in four respects; in referring to words such as "hot prowl", "cold prowl", "knifing", and "shakedown room". There was evidence that the defendant used these terms when confessing to the crimes for which he was charged. In commenting that the defendant has an "interesting vocabulary"; in referring to the fact that defendant in his statement described himself as one of the "best second story men in the country"; and in arguing that thankfully one of the women, whose room was burglarized, was a "heavy sleeper" and "didn't wake up,", because as you will see by his own statement , "Mr. Carter owned a gun".

The contention is that these comments were prejudicial as inferring the commission of other crimes and resulted in placing defendant's character in issue when he hadn't taken the stand or otherwise put it in issue.

We are in accord, that reference in argument to anything not legally admissible against defendant, tending to call Jury's attention to other crimes in manner which might be prejudicial, are improper. Burrows v. State, 38 Ariz. 99, 297 P. 1029; Perez v. Territory, 12 Ariz. 16, 94 P. 1097. However, a prosecutor is allowed considerable latitude in discussion of evidence, possible facts Jury may find and reasonable inferences which may be drawn therefrom. State v. Jordan, 80 Ariz. 193, 294 P.2d 677; State v. Dowthard, 92 Ariz. 44, 373 P.2d 357; State v. Thomas, 78 Ariz. 52, 275 P.2d 408 (1954), affirmed 356 U.S. 390, 78 S.Ct. 885, 2 L.Ed.2d 863; State v. McLain, 74 Ariz. 132, 245 P.2d 278 (1952). In State v. Dowthard, (supra) at page 47 of the Arizona Reports, 373 P.2d at page 359 we said:

"In determining whether remarks made by counsel in criminal cases are so objectionable as to cause a reversal of the case, we have stated the best rule to be: "'* * * Do the remarks call to the attention of the jurors matters which they would not be justified in considering in determining their verdict, and were they, under the circumstances of the particular case, probably influenced by these remarks.' Sullivan v. State, 47 Ariz. 224, 238, 55 P.2d 312, 317 (1936)."

To properly consider this assignment we must review the transcript to determine how this evidence came into existence and what effect it has in the case so as to determine whether its existence and the remarks of counsel are prejudicial error.

Investigating officer (Lieutenant Love) testified that he had an oral conversation with the defendant wherein the defendant stated that his entry into Room 139 of the Velda Rose Motel was a hot prowl. That he said the difference between a hot prowl and a cold prowl was that a hot prowl was when the person was present in the room. The officer further testified that when the defendant was telling of his entry to the Golf House that he described it as a knifing, and that he said a knifing was where a knife was

used to trip the lock. He further testified that the defendant told of taking the typewriter (involved in one of the counts) to Room 131 which was a shakedown room, and that a shakedown room is a room where you sort the articles before you remove them from the premises. When the defendant was asked about how he entered a room on the second floor he stated that he was one of the best second story men in the country.

One can see that the words used by the County Attorney were the precise words testified to as having been used by the defendant in describing each of the crimes for which he was on trial. We cannot agree that this is an instance where the prosecutor is guilty of misconduct in making unwarranted statements inferring the commission of other crimes or the placing of character in issue. It would seem that every word in a statement made by a defendant is important especially when it is used in describing the crime for which he is on trial, and that the Prosecutor is well within his right to use the exact words uttered by the defendant and to draw reasonable inferences therefrom to throw light on defendant's criminal intent at the time of the alleged unlawful entry.

The defendant further assigns as error the Prosecutor's statement in argument that the words testified to as uttered by defendant was an "interesting vocabulary". Here again we cannot agree that this is the placing of character in evidence. For defendant to assert that the word "interesting" constitutes an improper reference to a prior criminal record of the defendant is to ignore the plain meaning of the word.

The next assignment to be considered is the assignment that in arguing to the Jury the County Attorney inferred that thankfully one of the women whose room was burglarized was a "heavy sleeper" and "didn't wake up", because as you will see by his own statement "Mr. Carter owned a gun". The defendant disputes the evidentiary basis for this comment. However Exhibit 18 in evidence, which is one of the statements given by defendant, recites that in committing one of the crimes for which he was being tried, the defendant "lost a 25 Caliber Browning Pistol". Accordingly, the comments of the County Attorney are substantiated by this bit of evidence that the defendant had at one time in his possession a gun. It would not appear to be drawing an unreasonable inference from the evidence to intimate that something might have happened had she awakened. This something is not spelled out, and we are not going to assume that the Jury, being of average intelligence, were improperly influenced by these remarks. Especially since at the very beginning of his argument the prosecutor reminded the Jury that "What I say during argument is not evidence in this case". And " * * * You have been instructed that remarks or comments of legal counsel in this case which are extraneous to the presentation of the case or relating to the admission of evidence are to be disregarded altogether by you. And any such extraneous remarks or comments or conduct of counsel, if there were any, are not to prejudice you for or against the respective parties * * *".

The assignment of error that the County Attorney improperly referred to an inventory in his argument and repeatedly asked questions during the trial relating to the inventory which he knew would never be admitted in evidence will be considered next.

The inventory contains some 342 items which were in defendant's car at the time it was searched and the property removed. Among the items were included those that form the basis of the burglary and thefts for which the defendant was on trial. The inventory was only marked for identification and was part of the foundation for the introduction of the items involved in the various counts of the indictment. The many questions asked were for the witness to look at the inventory to refresh his memory as to whether the items being offered were a part of the items taken from the car. The County Attorney made this plain to the Court in the absence of the Jury, when he informed the Court that it was not being offered in evidence because it contained the fruits of

other crimes and it was merely used as a refresher for the witness. They guarded well any reference that any of the other items were involved in any crime. No such evidence appears in the record.

■ The law is well established that in certain situations, for the purpose of enabling him to testify, a witness may be permitted to refresh his memory or stimulate his power of recollection by the use of written matter. A witness who has the means of aiding his memory by a recourse to memoranda or papers may be required to look at such papers in order to enable him to ascertain a fact with precision, to verify a date or to give more exact testimony than he otherwise could as to times, numbers, quantities and the like. 4 Jones on Evidence 5th Ed. Section 964, p. 1815.

Error is not assigned to the use of the inventory but only to the County Attorney's conduct in constantly referring to the exhibit.

■ Here again we must determine if the Jury under the circumstances of this case was prejudicially influenced by the referrals and remarks. Although we do not believe the County Attorney was as cautious as he should have been, especially in his argument, we do not find improper remarks or referrals that would be prejudicial. At far as we can see in the maze of objections by the defendant the only time the exhibit was referred to was when each item forming the basis of the charge was offered in evidence, and in each instance it was referred to refresh the memory of the witness.

The Prosecutor did not refer to the inventory as such in argument but merely called attention to the Jury that out of 300 items in defendant's car he was able to pick certain items as coming from Room 139. The evident purpose as reflected in his argument was to call the juror's attention to the keen memory of the defendant in picking out these items which were later identified as coming from Room 139, and thus add credence to defendant's ad-

mission that he had taken them from this room.

We have read the record carefully and deem the other remarks complained of as having been made by the Prosecutor are not of sufficient importance for further consideration.

■ We have also considered all of these assignments as a whole and still are of the opinion that there is no prejudicial error, however, even assuming as contended by defendant that the remarks ascribed to him might be interpreted as giving the Jury an impression that he has criminal ways and criminal knowledge there is nothing in the record that the remarks under the circumstances of this case so prejudiced the Jury that it was the cause of the conviction of the defendant. State v. Sullivan (supra.)

We shall attempt to consider the remaining assignments in as orderly a fashion as we can considering the many questions raised in the briefs.

Defendant claims that the Court made erroneous rulings in permitting testimony of defendant's statements which included references to the words, "hot prowl", "cold prowl", "knifing", and "shakedown room", and the description of himself as one of the "best second story men in the country".

We considered this assignment carefully when covering the previous question concerning these remarks. These statements, allegedly made by defendant, were properly received in evidence as voluntary, extra judicial oral statements of defendant in describing how he committed the acts in issue. The words were a necessary part of the statement, were relevant to the issues and we see no error in their admission.

Before continuing, a review of certain portions of the record before us is necessary.

When the defendant was arraigned in the Superior Court on July 25, 1963, he was represented by an able attorney, Mr. Edward Rapp. On August 15th Mr. Rapp withdrew with the defendant's permission

and the record reads that defendant waived request for the appointment of counsel and desired to represent himself.

Following Mr. Rapp's withdrawal defendant took over his own defense and appeared in court around twenty times on motions and writs mostly prepared by himself. On January 3, 1964, a minute entry reads:

"Let the record further show that this is the third time within two weeks that the defendant has appeared before this Court, and this Court insisted that the defendant have counsel, that this Court will appoint defense counsel, and the defendant has refused to accept counsel. Defendant has informed the Court that he is not a pauper, that he is able to employ counsel, but defendant informed the Court that he has studied law and is capable of representing himself."

At the beginning of his jury trial on January 8, 1964, defendant made five motions for mistrial which consumed the entire morning session. By afternoon Judge Stanford was of the mind that defendant should be represented by counsel and called for Mr. Sydney Block, a respected, experienced attorney, to represent him. Defendant strongly objected to this and insisted on conducting his own case. The Court, as the record shows, then appointed Mr. Block to advise the defendant and to help him in all matters concerning the trial. The Court thereafter resumed the trial before the Jury and informed them of the appointment. With the assistance and participation of Mr. Block a jury panel was selected and the giving of testimony for the prosecution began. On January 9th, Mr. Block, on behalf of defendant, moved for a mistrial because of harmful evidence given by a witness. The motion was granted and four days later a new trial was started. Mr. Block in Court sessions in the absence of the Jury continued to participate as an attorney. He presented several motions and along with the defendant argued in support of these

motions. While they were arguing a defense motion for detention of the Jury submitted by Mr. Block the Prosecution wanted to know if it was the defendant's or counsel's motion and Mr. Block answered that the defendant had asked him to file it. The Prosecutor also objected to having any combination of the defendant asking questions and the attorney asking questions of the same witness. The Court ruled that if the defendant, Mr. Carter, wanted to ask the questions then Mr. Block would have to stay in the background and tell him what to do but could not take part in it, whereas if Mr. Block took over then the defendant would have to be quiet and tell Mr. Block what he wanted him to ask.

We now consider the claimed error that the Court limited defendant's cross-examination, and entwined with this is the contention that the Court prejudicially misconducted itself.

We have carefully read the transcript and it is replete with instances where the defendant went beyond all propriety although repeatedly admonished by the Court. Defendant persisted throughout the trial in insulting and abusing witnesses, such as calling them "damned liar", "dumb", "Mr. Snake", "pimp by proxy", "idiot", one who "raped a 12 year-old", and "congenital liar"; in attacking the Court and prosecution, such as alluding to a "frame up" and "frame" accusing the County Attorney of objecting to questions because "you might lose this case", complaining of "running against malicious prosecution"; in testifying to facts in the case, in the role of counsel and not witness; in seeking to impugn the testimony of witnesses by stating that "I impeach" rather than by proper methods of impeachment, even after the Court sought to indicate the proper methods.

Most of the language above came about when defendant repeatedly tried to cross-examine witnesses on extraneous or collateral matters without much more in mind than to go on a fishing expedition in hopes

of obtaining embarrassing or disgraceful information.

To demonstrate why we believe this to be a purpose of the defendant we cite the following example: Officer David Sanders was called as a short witness by the prosecution to testify to checking the keys in Exhibit 11 to see if they fitted the doors in question at the Velda Rose Motel. Defendant on cross-examination was permitted to elicit that the officer had been on the police force four and one half years, and prior to that had been in the Army; that he was born in Durant, Oklahoma and had never been in jail. While defendant was insisting that the witness testify if he ever worked for a living in the town in which he was born the following colloquy took place when Prosecutor's objection was sustained: " * * * I don't know who the man is, I'm trying to prove to the jury there may be something in his past." The Court: "If you know anything you should bring it out". At other times in the interrogation defendant made such remarks as " * * * he might be a Communist for all we know", and " * * * he may be an ex-convict for all we know".

■ We find no quarrel with the authorities cited by defense. A defendant has an absolute right to cross-examine an adverse witness, and if at all within the proper bounds, such rights may not be unduly interfered with by the trial court, and the denial of reasonable latitude in cross-examination is prejudicial error. State v. Holden, 88 Ariz. 43, 352 P.2d 705, 715 (notes 14–15) (1960); Art. 2, Sec. 24, Ariz.Const. A.R.S.; A.R.S. Sec. 13–161(3); Alford v. United States, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624.

Cross-examination is one of the greatest tools an attorney has to seek the truth. The purpose of such examination being the explanation of matters to which the witness has testified in chief and the discovery of facts which are favorable to the examiner. So far as cross-examination relates either to facts which are in issue or facts which

are relevant to the issue it may be pursued by counsel as a matter of right.

Jones on Evidence has this to say on the question of relevancy:

"The rule requiring testimony to be confined to the point in issue is, in its application to the cross-examination of witnesses, more liberally construed than it is in its application to their examination in chief. For the purpose of testing the credibility of a witness, it is permissible to investigate the situation of the witness with respect to the parties and to the subject of litigation, his interest, his motives, inclinations and prejudices, his means of obtaining a correct and certain knowledge of the facts to which he bears testimony, the manner in which he has used those means, his powers of discernment, memory and description. The character, habits and mental condition of the witness may be investigated. 4 Jones on Evid. 5th Ed. § 914, p. 1710.

"Although on cross-examination witnesses are often questioned as to matters which are collateral to the principal issues in the settled rule that a witness may not be interrogated as to matters which are wholly irrelevant and immaterial; and it is proper for the court to refuse to permit cross-examination as to such matters, the court's decision being sustainable as an exercise of judicial discretion." * * * (authorities supplied). 4 Jones on Evid. (supra) § 915, p. 1714.

■ We agree that a witness may be asked questions which have a legitimate tendency to shake his credit even though embarrassing or affecting his character, however, the power to determine the limits of this examination is vested with the trial court to the extent that the trial court's ruling is not grounds for reversal unless the appellant establishes an abuse of discretion which has occasioned prejudice. We find no such abuse.

Defendant complains that the court made several comments on defendant's cross-examination such as "Mr. Carter, ask him questions that have some bearing on the case"; and that the court told the defendant on several occasions "you are insinuating" which tended to lead the Jury to believe that the Court thought the defendant was trying to pull the wool over the eyes of the Jury.

■ We have examined all the instances cited by counsel and although we find some unfortunate remarks by the Court we can say that he exercised the proverbial patience of Job in dealing with the defendant. We find in one instance a whole page of the transcript devoted to sustaining objections to the same question repeatedly asked by the defendant.

■ The defendant has a constitutional right to appear and defend in person but when he does he must act with propriety and conduct himself as an officer of the court. People v. Mattson, 51 Cal.2d 777, 336 P.2d 937, and he cannot complain if through his misconduct matters crept into the case that would not otherwise have been present. This is particularly true, as in this case, where the defendant has insisted against advice of the Court to be his own attorney. He cannot create error and then assign it as a basis for appeal.

Defendant complains, as unsupported by evidence, at the giving of the underlined portion of the following instruction which is A.R.S. 13-301:

"In this article, unless the context otherwise requires:

"1. 'Enter' includes the entrance of the offender into the places enumerated in § 13-302, or an outhouse or other building not enumerated, or the insertion therein of any part of the offender's body, *or of an instrument or weapon held in his hand, or used or intended to be used to threaten or intimidate the persons therein,* or to detach or remove the property.

"2. 'Nighttime' means the period between sunset and sunrise".

■ We cannot agree with this contention as there was evidence that the entry into the Golf House was performed by "knifing", that is, the use of a knife, and there was also evidence concerning the loss by defendant of a 25 Caliber Browning pistol during the commission of one of the crimes. We find that the reading of the statutory definition was proper.

■ We have considered the failure to give defendant's Instruction No. 1, which is a short instruction asking the Jury to consider with caution and weigh with great care all evidence relating to any incriminatory statements. We will not go into whether this instruction is a correct statement of the law as we have considered all the instructions as a whole and find that even though a proper cautionary instruction might have been advisable, the Court in giving lengthy and sufficient instructions on admissions and confessions, together with the presumption of innocence and credibility of witnesses and reasonable doubt instructions adequately covered the matter. If it cannot be reasonably concluded that the failure to give this instruction resulted in a verdict different from that which would have been reached if the instruction had been given we cannot hold it reversible error. Bush v. State, 19 Ariz. 195, 168 P. 508; West v. State, 24 Ariz. 237, 208 P. 412.

We next consider the objection to the appointment of advisory counsel and that this procedure violated defendant's right to due process of law.

From the time the attorney who represented defendant at his arraignment withdrew, Mr. Carter insisted on his right to represent himself and to conduct his own trial. From the record we glean that he was literate, mentally competent, alert and professed having studied law. His conduct before and during the trial reveals that he has some knowledge of procedure although at times he either did not understand or

refused to recognize some of the rules, particularly some of the rules of evidence.

 Arizona Constitution Art. II, Section 24, provides that the accused shall have the right to appear and defend in person. When a defendant is sui generis, intelligent and mentally competent he cannot be forced to accept representation by counsel. Burgunder v. State, 55 Ariz. 441, 103 P.2d 256, Watts v. United States., 9 Cir., 273 F.2d 10, State v. Van Bogart, 85 Ariz. 63, 331 P.2d 597.

The defendant wanted to and did have complete control of his case. He made all the motions and objections he desired. He insisted on and did question all of the witnesses. He made a record of objecting to Mr. Block but nevertheless called upon him to present matters to the court. The request for detention of jurors at beginning of the trial is an example. The court did refuse to permit Mr. Block to make objections and motions in the presence of the jury. The court advised Mr. Block that in the event he desired to make an objection he should indicate it to the court who would give him time to consult with the defendant who would then have the privilege of making the objections.

The question now presented is not whether the defendant has been denied the right to represent himself but whether he has been denied due process of law by having appointed for him an attorney to whom he could turn for advice and assistance, and who was limited in making objections in the manner heretofore mentioned.

In People v. Chessman, a California case where defendant conducted his own defense and a Deputy Public Defender (Mr. Matthews) acted only in an advisory capacity the trial Court refused the request of defendant to permit Mr. Matthews to argue certain aspects of the case to the Jury. The defendant therein contended that this ruling was prejudicial error. The Court said:

"Furthermore, even if we assume that Mr. Matthews might have argued certain aspects of the facts as related to the law more skillfully than defendant, it appears that defendant by his insistence upon conducting his own case and refusing to appear by counsel has put himself in a position where he cannot complain of the trial court's ruling. He made no objection thereto in the trial court; also, as stated, he was not represented by 'counsel' at all. Unless a party authorizes an attorney to represent him he is not entitled to have the attorney speak for him. There was no error in refusing to permit the consulting but non-representing attorney to argue the case". People v. Chessman, 38 Cal.2d 166, 238 P.2d 1001–1015.

Precedence for appointing counsel in an advisory capacity to a defendant who insists on representing himself, is found in State v. Van Bogart, (supra). It is well at this time to also note in the Van Bogart case that the defendant had been gagged by the trial court because of his repeated outburst during the proceedings. Our Supreme Court in passing on this aspect said that although the measure employed by the court was drastic, yet, it is not only the right but the duty of a presiding Judge to maintain order and decorum in the court room. We note that one of the reasons for appointing advisory counsel in the instant case was to help maintain an orderly trial.

Under the circumstances the court could not force the defendant to accept representation of counsel, yet he was confronted with wanting to make sure of an orderly trial with as little opportunity for error as possible. We believe he took the only alternative left to him by appointing Mr. Block and at the same time making sure that Mr. Carter had complete freedom in conducting his defense.

 If the refusal to grant advisory counsel to a defendant who represents himself or the refusal to permit advisory counsel to participate in a trial when appointed is not in violation of due process we cannot see where the appointment of one is viola-

tive of due process even though the court may have set out a restricted procedure for making objections. The defendant was at liberty to not use counsel, or, as he did in this case, avail himself of his services. We find no merit to this assignment of error.

■ We see no merit to defendant's contention that he should have been granted a continuance. He acted as his own counsel and had months upon months to prepare for his own trial.

■ The defendant insists that the court should have disqualified itself. The record shows that at his first trial defendant filed an Affidavit of Bias and Prejudice against one of the Judges, who thereupon assigned the case to Judge Stanford. Judge Stanford presided at the first trial which resulted in a mis-trial. Prior to the instant trial defendant then filed application for change of Judge, but gave no reasons for the alleged bias and prejudice of Judge Stanford who denied the application. Defendant was entitled to and did receive one change of Judge. Under the statutes he was entitled to no more. Arizona Revised Statutes Sec. 12–411, Rule 198 of the Rules of Criminal Procedure, 17 A.R.S.

The Judgment is affirmed.

STEVENS, C. J., and CAMERON, J., concurring.