722 P.2d 366

**STATE of Arizona, Appellee,**

v.

**Michael Dennis MOTT, Appellant.**

**No. 1 CA–CR 8086.**

Court of Appeals of Arizona, Division 1, Department C.

March 11, 1986.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, Chief Counsel, Crim.Div., Stanley Patchell, Asst. Atty. Gen., Phoenix, for appellee.

James Hamilton Kemper, Phoenix, for appellant.

## OPINION

KLEINSCHMIDT, Judge.

We remand this case with directions to the trial court to set aside the defendant's plea of guilty. The trial judge allowed the defendant to enter the plea without disabusing him of the notion that the plea could be set aside if the defendant later came up with evidence to show that he was not guilty. The case is governed by the recent supreme court decision in *State v. Anderson*, 147 Ariz. 346, 710 P.2d 456 (1985), which mandates reversal. We discuss hereafter the proper way for trial judges to deal with inquiries concerning the finality of a plea of guilty.

The appellant pled guilty to kidnapping pursuant to *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). The plea agreement was very advantageous to him. The record shows that at the time of the change of plea the defendant told the judge he was entering an *Alford* plea to give himself time to prove that he was innocent. Neither the judge nor counsel advised the appellant on the record that for all practical purposes a plea of guilty was final and that proving himself innocent would not entitle him to set aside the plea.

As the plea proceeded the defendant repeated that even though he was pleading guilty he was going to clear himself, and again no one told him on the record that such would not effect the legal consequences of his plea. The same remark was repeated a third time moments later without comment from the judge or counsel. As the proceeding progressed the judge recited the rights the appellant was waiving by pleading guilty and asked him if he understood them. The following exchange occurred:

[Defendant] I would like to make a statement about that. You said also my constitutional rights—if I have any new evidence that they might reopen the case or dismiss it or look into it or something, right? In other words, I'm not quitting on this deal, I'm innocent. Now, what I mean, but I just—they told me that, and also said within seven years if I obeyed my probation, that I could have this expunged from my record under this *Alford* plea, correct?

THE COURT: Yes.

THE DEFENDANT: I will pursue to prove my innocence. I'm innocent in fact of this whole matter.

Yes, I understand what you are saying at this point and the way I'm taking this deal, that I do give up these rights until I am able to clear myself.

THE COURT: All right. Then, as to all matters dealing with this trial, then, do you understand that you are giving up those rights?

THE DEFENDANT: Yes.

After some further discussion of the rights the defendant was waiving, the following exchange occurred:

THE COURT: You understand that [that defendant was giving up his plea of not guilty] now?

THE DEFENDANT: Yes.

THE COURT: And do you give that not guilty plea up?

THE DEFENDANT: Yes, but I have a question.

THE COURT: What's the question?

THE DEFENDANT: It's about my constitutional rights as reopening a case. In other words, if I do come up with evidence which I intend to do and which I will do as soon as possible, then I have a right to reopen the case, right? In other words, if I could prove that I'm telling the truth, right—in other words, I know I'm telling the truth about these matters.

THE COURT: Well now, let's look at this again. You talk about reopening it when you are merely pleading to it at this time. If you and—and I know both attorneys have told you this, but if you feel that the evidence should be presented, then you may want a trial, but the point I'm trying to indicate to you, the only way that you would be able to go back with respect to this charge, to go back into the record is by making an immediate appeal.

THE DEFENDANT: Immediate appeal?

THE COURT: I will be advising you to that effect.

THE DEFENDANT: How does that work?

THE COURT: Once you make your plea, you are giving up your right to do as you indicated, go back into the record. I'm not certain quite how you mean that—

MR. DONOFRIO: Your Honor, I think what he means, he wants to know that there is such a thing as Rule 32, if newly discovered evidence which was not available to him at the time this plea proceedings, he could take and file a petition for post conviction relief. That's all he is asking. He has talked to Mr. Adams [defendant's attorney] about this.

MR. ADAMS: Yes, Your Honor. I have advised him that if he were to come up with some evidence that was not available at this time, substantial evidence that he could in fact file a petition for post conviction relief under Rule 32 and come back into this Court with that evidence. If it were substantial enough to set aside this plea, that is another question but he also has that right and I advised him that he would have that right. I think what he is saying is, if he

ever had sufficient evidence to present a Rule 32 by way of post conviction relief, that he could present that to the Court at a later date, even after he pled guilty. I think that's also available to him.

THE COURT: Let me clarify for the record why I am slowing down on this. The problem is that I am wanting to make sure that Mr. Mott understands and is going forward in good faith at this time rather than projecting into laying a foundation for post conviction relief. To me the better wisdom of it for Mr. Mott to be sure that he understands and gets his rights protected at this time and that is why I just want to make sure you fully understand. It is the constitutional rights that we are concerned about, and as far as—let's look at it this way: The plea itself certainly, that would not be—I mean, the appeal itself would not be barred by waiving constitutional rights. So, I would think that anything after would also fall within that category, but I still want this Defendant to know that he is in effect waiving a full determination, in particular of those matters that are to be dismissed, and I just hate there to be any misunderstanding.

THE DEFENDANT: Okay.

THE COURT: Do you feel you understand it now?

THE DEFENDANT: I want to ask one question.

At this time, I'm doing that, yes.

THE COURT: You feel you understand that?

THE DEFENDANT: To go to trial at this time, yes—no.

THE COURT: And do you give up those constitutional rights that we went over?

THE DEFENDANT: Yes.

THE COURT: And has anyone promised you anything now with respect to sentencing that has not been put in that plea agreement; anything outside of the agreement, any lawyer or any judge or any friend, anybody?

THE DEFENDANT: Not that I can think of.

In *Anderson,* our supreme court held that a defendant, who was advised at the time he pled guilty that if evidence later developed that would exonerate him he could move to withdraw his plea, was ineffectively represented by counsel. The court reasoned that while the advice was technically correct it was misleading because it would normally be understood to mean that a motion to withdraw the plea would be routinely granted. Since counsel did not advise the defendant in *Anderson* that leave to set aside the plea was discretionary and that it would require him to bear a heavy burden of proof, the plea was set aside. We see no difference between this case and *Anderson.* Here, the appellant was expressly told that if exonerating evidence developed he could ask to obtain post-conviction relief under Rule 32. While the judge did make an attempt to clarify this, she did not succeed in doing so. The record before us does not establish the defendant was ever told that relief under Rule 32 is discretionary, that it can be forfeited if the defendant was not diligent in producing the evidence before trial, and that it may be forfeited if a proceeding to vacate the conviction is not begun promptly after the new evidence is available.

The dissent sees a distinction between this case and *Anderson* in that this was an *Alford* plea and *Anderson* was a plea of no contest. The supreme court in *Anderson* recognized "that there is no significant difference between a plea of guilty with a protestation of innocence and a plea of no contest,...." *Anderson,* 147 Ariz. at 350, 710 P.2d at 460. Mott was misadvised to the same degree and in just the same way the defendant in *Anderson* was misadvised.

We do not suggest that when taking a plea the trial judge must advise a defendant about the nuances of petitions for post-conviction relief or motions to withdraw the plea. On the contrary the judge should advise the defendant that pleas of guilty are final. If the defendant raises the issue of later vacating a plea the judge should not attempt to advise him of how pleas and convictions may be vacated. Instead, the judge should, in no uncertain terms, tell the defendant that he should not enter a plea of guilty unless he accepts the fact that it will be final.

We have considered whether this matter should be remanded for a hearing to determine whether the defendant was, notwithstanding the state of the record, aware of the fact that his plea was final. Before he was sentenced the defendant did attempt to withdraw his plea and the trial court inquired as to the state of his knowledge based on what he had been told by his attorney. The defendant's attorney testified that he did not advise the defendant he could withdraw the plea and the trial judge found that such was the case. What the trial judge wholly failed to assess was that which transpired during the change of plea proceeding. While the appellant was not expressly told he could later withdraw his plea, the proceeding would have left most people with that impression. At very least, the point became hopelessly muddled. Consequently, the plea was not voluntarily and intelligently made as required by Rule 17.1(b), Arizona Rules of Criminal Procedure.

We have reviewed the record with respect to the contention that the defendant did not properly waive his right to counsel. We are satisfied that the waiver was knowingly, voluntarily, and intelligently made.

It is ordered remanding the cause to the trial court with directions to vacate the plea of guilty.

CORCORAN, J., concurs.

EUBANK, Judge, dissenting:

I disagree with the majority that *State v. Anderson,* 147 Ariz. 346, 710 P.2d 456 (1985) applies in this case. *Anderson* involved a guilty plea; appellant here was dealing for an *Alford* plea (*North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970)). There is a world of difference. The Alford guilty plea is only an acknowledgment of the strength of the State's case by the defendant. In it he makes the best that he can out of a tough situation. The appellant fully understood

that problem. He claimed that someone else had done the crimes of kidnapping and sexual assault with a gun. His attorney was able to strike an Alford plea agreement with the county prosecutor which dismissed the two counts of sexual assault, dismissed the allegation of dangerousness and agreed to the probation disposition of appellant.

It is true as counsel and the majority indicate that appellant waggled considerably before and after entering his *Alford* plea. However, the record shows that the court bent over backwards to accommodate the appellant and to assist him in understanding the proceedings. At the end of the change of plea hearing, following a conversation between appellant and his advisory counsel, the following occurred:

MR. ADAMS [appellant's advisory counsel]: Your honor, if I might try to clarify matters a little bit, I have discussed with Mr. Mott many times and he feels that he is being falsely accused, that the facts as stated by the State are not the true facts, but he also knows that if he were to go to trial they would present this evidence, that there is a likelihood of conviction, that the original offense as charged is a dangerous offense, that he would go to prison if he were convicted.

Because the State has offered to drop the allegation of dangerousness and stipulate to probation, it is my understanding that Mr. Mott wants to enter the guilty plea with the full knowledge that he is not admitting to having done this, but he is only pleading guilty to take advantage of this plea agreement. That's what I have advised him and I am certain that he understands it that way.

THE COURT: Do you understand it that way, Mr. Mott?

THE DEFENDANT [Mr. Mott]: Yes.

THE COURT: And now after all the discussion that has been made, and knowing that the State has said they would prove and your feelings about the matter and the fact of the totality, the whole plea agreement of dismissal of two causes, and the stipulated probation and the fact that you would not be having to

have a trial, the risk that you indicated yourself was involved there in a jury possibly finding you guilty of all three counts, because of all of that, you feel that it is wise to plead guilty and that is why you are still pleading guilty, is that correct?

THE DEFENDANT: Yes, I am doing that under Alford, yes.

Thus, I disagree with appellant and the majority opinion that his plea was not voluntarily and intelligently made. The record supports the wisdom of his plea. The state had a very strong case against him and he made a very good bargain, getting probation in the process. His criminal record certainly did not justify probation in my opinion.

Regarding appellant's comments: "I still intend to clear myself, I am not guilty...." and "[I]f I have any new evidence that they might reopen the case or dismiss it or look into it or something, right?" and "I will pursue to prove my innocence ... until I am able to clear myself ..." and others, there is no question that appellant was waggling between accepting the plea agreement and rejecting it. He properly characterized the whole transaction as a "deal". The record is clear that he pled guilty pursuant to *Alford* because of the strength of the state's case against him and in order to receive probation. The record shows us that he got exactly what he was bargaining for: probation.

Appellant also contends that defense attorney misinformed appellant concerning his ability to later disprove the charges based on Rule 32, Arizona Rules of Criminal Procedure. I disagree. I have reviewed the record and it shows that while appellant pled guilty (Alford) he still wanted the option of coming back to the court, pursuant to Rule 32, Arizona Rules of Criminal Procedure, in the event he discovered substantial evidence that he was not in fact guilty of the crime as charged. His counsel advised him that Rule 32 was available for that purpose. The trial court attempted to throw cold water on the whole idea by sticking to appellant's waiver of constitutional rights and obtaining a waiver

on the record. Indeed, Rule 32.1, *id.* does provide:

Subject to the limitations of Rule 32.2, any person who has been convicted of, or sentenced for, a criminal offense may, without payment of any fee, institute a proceeding to secure appropriate relief on the ground or grounds that:

\*     \*     \*     \*     \*     \*

e. Newly-discovered material facts exist, which the court, after considering:

(1) the probability that such facts, if introduced would have changed the verdict, finding or sentence;

(2) The diligence which would have been required to discover and produce the evidence at trial;

(3) The promptness with which the petitioner has commenced a proceeding after discovery of such facts,

may require that the conviction or sentence be vacated;

Rule 32.2(b) expressly provides an exception to the defense of preclusion involving a Rule 32.1(e) matter. Therefore, the advice given appellant by his counsel was correct and he was not misinformed.

I would affirm.