784 P.2d 278

**STATE of Arizona, Appellee,**

v.

**Michael Dennis MOTT, Appellant.**

**Nos. 1 CA–CR 9046, 1 CA–CR 9000.**

Court of Appeals of Arizona, Division 1, Department A.

Nov. 7, 1989.

Redesignated as Opinion and Publication Ordered Jan. 4, 1990.

Robert K. Corbin, Atty. Gen. by Jessica G. Funkhouser, Chief Counsel, Crim. Div. and Janet Keating, Asst. Atty. Gen., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by James H. Kemper, Deputy Public Defender, Phoenix, for appellant.

Michael Dennis Mott, Florence, pro. per.

## MEMORANDUM DECISION

JACOBSON, Presiding Judge.

These consolidated appeals raise one arguable issue: did the trial court deny defendant's right to counsel by allowing defendant to represent himself at two jury trials? Because we find that defendant made a knowing, voluntary, and intelligent waiver of his right to counsel, we find no denial of his right to counsel. In addition, we have conducted an independent review of this matter and finding no fundamental error, we affirm the convictions and sentences.

### I. FACTUAL BACKGROUND

A. *Cause No. CR–140943*

On May 21, 1984, Theresa Tysiak and Ian Fenyves were traveling eastbound on Thomas Road in Phoenix. Tysiak was driving a pickup truck and Fenyves was following her on a motorcycle. At a red light, defendant pulled up parallel to Tysiak's truck in a red car, and attempted to get her attention by making obscene gestures at her. Tysiak proceeded through the intersection when the light changed. As they continued eastbound, defendant continued to make obscene gestures toward Tysiak, and began weaving into her lane. At some

point, Tysiak observed defendant uncover a gun.

After the road widened into three lanes, Fenyves pulled up in between defendant's vehicle and Tysiak's vehicle on his motorcycle. Fenyves slowed down, and motioned Tysiak to speed ahead, which she did. Defendant yelled obscene remarks at Fenyves and pointed the gun at him twice. Defendant then pulled into a parking lot. After noting that Tysiak was far enough ahead to be out of danger, Fenyves returned to the parking lot to get defendant's license plate number. As he did so, defendant pointed the gun at Fenyves for a third time. The victims later reported the incident to the police, and Fenyves identified defendant as the assailant from a photographic lineup. On June 5, 1984, defendant was indicted on three counts of aggravated assault arising from this incident.

After a trial at which defendant represented himself, the jury found defendant guilty of Counts I and III, but not guilty of Count II. The trial court sentenced defendant to aggravated terms of ten years imprisonment each on Counts I and III, to be served consecutively, with 294 days of presentence incarceration.

### B. *Cause No. CR–140750*

On May 22, 1984, while Officer Joseph Kuefner of the Phoenix Police Department was on patrol, he received a radio call to investigate a suspicious person in a vehicle at a nearby parking lot. The officer saw defendant in his car at that location and pulled in behind him. When defendant saw the police car behind him, he fled, leading the police on a high-speed chase through central Phoenix. Near Seventh Street and Thomas Road, defendant's car spun around and collided with another police car. As Officer John Buchanan, who had participated in the chase on his motorcycle, approached him, defendant pointed a gun at the officer. Buchanan's motorcycle hit defendant's car and knocked defendant back into his vehicle. Four officers converged on defendant and placed him under arrest.

On May 29, 1984, defendant was indicted for one count of aggravated assault and one count of flight from a law enforcement vehicle. After a trial at which defendant represented himself, the jury found defendant guilty of both counts. The jury then found that defendant had two prior felony convictions, and that he committed the present offense while released on bond. The trial court sentenced defendant on Count I to the presumptive term of 11.25 years of imprisonment, and on Count II to the presumptive term of 5 years of imprisonment. Additionally, the court imposed on each count the mandatory term of two additional years for crimes committed while on release, pursuant to A.R.S. § 13–604(M). These sentences were to run concurrently to each other but consecutively to the sentences imposed in CR–140943. Defendant also received 348 days of presentence incarceration on each count.

## II. PROCEDURAL BACKGROUND

Defendant timely appealed from both convictions. Defendant's court-appointed appellate counsel filed opening briefs in each appeal on June 13, 1986, raising the same sole issue in each:

Did the trial court deny defendant's right to counsel under the Sixth and Fourteenth Amendments to the United States Constitution when it allowed him to represent himself?

Defendant subsequently filed motions with this court indicating that he wished to represent himself in both appeals. On July 17, 1986, this court remanded the matter to the trial court for an evidentiary hearing on whether defendant knowingly, voluntarily, and intelligently waived his right to counsel on appeal. After a hearing, the trial court reported to this court its findings that defendant knowingly and voluntarily waived his right to counsel on appeal. On August 28, 1986, this court entered its order allowing defendant to represent himself on appeal. This court subsequently notified defendant that if he did not submit his supplemental opening briefs by March 13, 1987, we would submit these appeals for disposition pursuant to *State v. Tapp*, 133 Ariz. 549, 653 P.2d 6 (1982). Defen-

dant did not file a supplemental opening brief raising any additional issues.

This court proposed consolidation of these two appeals because they raised common issues of law and fact. *See* Rule 31.4(b), Arizona Rules of Criminal Procedure. In response to this court's request for objections to consolidation, defendant filed a motion in which he stated, "I now want full representation by counsel." On March 27, 1989, this court granted defendant's request for appointment of counsel, and ordered that his former counsel be reappointed, thus effectively terminating his former request for voluntary waiver of appellate counsel. The appeals were subsequently consolidated.

After taking this matter under advisement and reviewing the voluminous records in both causes pursuant to *State v. Tapp*, this court ordered the state to file an answering brief [1] addressing the following issues:

(1) Those issues raised in the opening brief; i.e., whether the trial court denied defendant's right to counsel by allowing him to represent himself at both trials;

(2) Whether the trial court erroneously relied on two Rule 11 psychiatric reports from a prior cause in vacating his order denying defendant's motion for self-representation, and the effect on appeal of the absence of those psychiatric reports from the record;

(3) Whether the trial court erred by allowing defendant to continue to represent himself at trial after numerous outbursts in the presence of the jury that may have prejudiced defendant's ability to receive a fair trial from an impartial jury.

## III. DEFENDANT'S COMPETENCY TO WAIVE COUNSEL

Defendant first expressed an unequivocal desire to represent himself at a pretrial hearing on October 23, 1984. At that point, trial was scheduled to begin the next day. The prosecutor asked that the court conduct a waiver of counsel proceeding, and defense counsel agreed, giving the following reasons:

I think we ought to have a hearing, because I'm not sure he's competent to represent himself. I think the standard of competency to stand trial is a different standard than to represent yourself, and to be perfectly candid with the Court, I don't think that Mr. Mott is able to concentrate on one subject long enough and follow through from an intellectual point of view, to be able to competently represent himself. I think he gets ... tied up on an emotional level about his innocence....

The court scheduled a hearing the next day to resolve the issue of defendant's self-representation. At that hearing, the court questioned defendant about his ability to handle his own defense. Defendant indicated that he had never seen a criminal trial except on "Perry Mason" and "Dallas." Defendant stated that he had dropped out of high school in either the 10th or 11th grade; he was unable to remember which. The court determined that defendant had no legal training, other than previous assistance from his advisory counsel in learning how the key number system works in the digests. Defendant did not know what a "leading question" was. He did not know the possible punishment facing him in these matters, so the court and counsel computed the maximum potential consecutive sentences and warned defendant of the dangers of self-representation in view of the maximum possible sentences, the complexity of the proceedings, and the availability of free legal help. The court advised defendant that if he represented himself, he would be held to the same standards as if he were represented by an

---

**1.** We wish to comment on the excellent quality of the brief submitted by the state pursuant to this court's order. The brief concisely and thoroughly summarizes more than 3,200 pages of transcripts and records from both trials into a 17 page statement of the case, with complete and accurate record references. It also directly addresses the issues raised by this court with well-reasoned arguments supported by well-reasoned authority. We appreciate the effort that went into the preparation of such a responding brief, particularly when the state did not have the benefit of defendant's appellate arguments on those sub-issues raised by this court.

attorney. Defendant indicated his willingness to represent himself. The state requested that the court also consider two psychiatric reports that had been filed in a previous case, which concluded that defendant was competent to stand trial pursuant to Rule 11, Arizona Rules of Criminal Procedure. The court took the matter under advisement.

By minute entry dated October 25, 1984, the court denied defendant's request to represent himself, giving the following reasons:

1. Although defendant Mott states that he understands the proceedings against him and the possible sentences, defendant's behavior and conduct observed by the court in the pretrial proceedings to date demonstrate that he does not understand the nature of court proceedings and self-representation. Defendant has stated during pretrial hearings that because he is innocent he will be acquitted. He does not recognize any other possibility, nor does he understand the task of representation.

2. Defendant's fixation on issues demonstrate his request for self-representation is not intelligently, voluntarily and knowingly made. Defendant's numerous and repeated requests for O.R. release are evidence of this fixation and his inability to make a waiver of counsel intelligently.

3. Further evidence of defendant's inability to make such a waiver intelligently, voluntarily or knowingly is his behavior during the numerous pretrial conferences. Frequently defendant has not answered the court's questions either by remaining completely silent or by bringing up matters that have no bearing upon the questions being asked.

4. Other evidence supporting the conclusion that the defendant cannot waive his right to counsel intelligently, voluntarily and knowingly is the number of competent attorneys defendant has discharged, indicating that the defendant has not understood, and/or refuses to understand and/or follow competent advice. Additionally, the defendant has continued to ask to pay his court-appointed attorney, even after it has been explained that this cannot be done. Earlier in these proceedings, the defendant requested the State to pay a private attorney, with the defendant later reimbursing the State. It has been explained to defendant on numerous occasions that the system did not work in that fashion. Although these incidents alone may not be enough from which to conclude that the defendant cannot waive his right to counsel, considered together with all of the circumstances presented they do lend support to the conclusion that the defendant does not understand the court process, and that he does not fully comprehend the consequences of such a waiver.

ORDERED denying defendant's motion to represent himself.

Defense counsel filed a motion for reconsideration, arguing that the court had applied the wrong standard in finding that defendant could not represent himself. The motion asked the court to consider the fact that "Mr. Mott was capable of waiving his constitutional right in this regard because [another judge] allowed him to represent himself in [a prior case], wherein Mr. Mott was charged with two counts of sexual assault and one count of kidnapping." Defense counsel further requested that the psychiatric reports from that prior case "be made a part of the record in this case," because both doctors concluded that "Mr. Mott was capable of waiving his constitutional rights."

On November 2, 1984, at the hearing on the motion for reconsideration, the court addressed defendant as follows:

THE COURT: ... Upon reconsideration, I do believe that I erred or made a mistake in my previous ruling denying you the right to represent yourself, and upon some reflection, the ruling was due, in part, to the time constraints that I was under, and having to rule and make findings of fact and conclusions of law, and probably in my effort to protect you from yourself in representing yourself, but that really isn't a valid consideration. That's not a basis upon which I can deny you the right to Counsel, just because I

think you'd be a lot better off if a competent attorney was representing you.

So without making the ruling to the contrary, I am ruling that, upon reconsideration, I erred in my previous ruling, which denied the Defendant the right to represent himself, and which concluded that the Defendant could not voluntarily, intelligently, and knowingly waive his right to Counsel, based upon the findings of fact that I previously entered, so I am vacating or setting aside the previous order that I entered. I think it was dated the 24th of October, 1985.

I think one of the things that triggered this thing off with me on Friday was recalling the psychiatrist reports, although they didn't have the benefit of really the Defendant's cooperation or any in-depth discussion with the Defendant. The psychiatrists' reports indicate that the Defendant, in their opinion, was, based on what they said, competent to stand trial; that he understood the nature of the charges against him, and that he understood the nature of the proceedings, and after weighing what was before them, the psychiatrists concluded that the Defendant was competent to stand trial.

I think that after considering that, and considering perhaps the time constraints and motivation that resulted in my previous ruling, my conclusion is that the Defendant is competent to waive Counsel.

The court issued its minute entry on November 2, 1984, setting aside its previous order, but set forth no findings of fact or conclusions of law as it had in the previous order. The trial court found that defendant voluntarily, knowingly, and intelligently waived his right to counsel, and appointed advisory counsel to be available to defendant at both trials. Defendant signed a written waiver of counsel.

The first issue we address is whether, after reconsideration, the trial court erroneously determined that defendant was competent to make a knowing, voluntary, and intelligent waiver of counsel. We start with the well-established premise that a defendant in a state criminal trial has a constitutional right to represent himself when he voluntarily and intelligently elects to proceed without counsel, and the state may not force an attorney upon him when he wants to conduct his own defense. *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *State v. Hartford*, 130 Ariz. 422, 636 P.2d 1204 (1981), *cert. denied*, 456 U.S. 933, 102 S.Ct. 1987, 72 L.Ed.2d 452 (1982). In *Faretta*, the United States Supreme Court reversed the trial court's ruling that the defendant had not made a knowing and intelligent waiver, reasoning as follows:

> Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open." ... We need make no assessment of how well or poorly Faretta had mastered the intricacies of the hearsay rule and the California code provisions that govern challenges of potential jurors on *voir dire*. For his technical legal knowledge, as such, was not relevant to an assessment of his knowing exercise of the right to defend himself.

422 U.S. at 835–36, 95 S.Ct. at 2541, 45 L.Ed.2d at 581–82. The trial court's questioning of Faretta had revealed that he had a high school education and had once before represented himself in a criminal prosecution. However, Faretta had indicated that he did not understand the hearsay rule and was unaware of specific state law regarding the challenging of jurors. *Id.* at 807–08, 95 S.Ct. at 2527–28, 45 L.Ed.2d at 566–67.

The Arizona Supreme Court has similarly analyzed a defendant's right to self-representation:

> Arizona cases have consistently recognized the right of a defendant to represent himself ... as has the United States Supreme Court.... It should be noted, however, that because a defendant is competent to stand trial does not mean that the defendant is also competent to

waive his right to assistance of counsel.... The standard of competence to waive the right to counsel is higher than that required to stand trial.

*Hartford,* 130 Ariz. at 424, 636 P.2d at 1206 (citations omitted).

■ Whether a defendant can make an intelligent waiver depends on the totality of the facts and circumstances of the case. *State v. Doss,* 116 Ariz. 156, 568 P.2d 1054 (1977); *State v. Dungan,* 149 Ariz. 357, 718 P.2d 1010 (App.1985). Factors the court can consider include a defendant's background and experience, *Dungan;* any current or past problems relating to mental competency, *Hartford;* his understanding of his constitutional rights and the role of counsel within the legal system, *State v. Evans,* 125 Ariz. 401, 610 P.2d 35 (1980); as well as defendant's conduct, *State v. Fayle,* 134 Ariz. 565, 658 P.2d 218 (App. 1982). The court can consider psychiatric reports as well as its own observations of the defendant. *State v. Harding,* 137 Ariz. 278, 670 P.2d 383 (1983), *cert. denied,* 465 U.S. 1013, 104 S.Ct. 1017, 79 L.Ed.2d 246 (1984).

Here, the main factor the trial court relied on in reversing its previous order and allowing defendant to waive counsel was the two psychiatric reports that had been made in a prior case to determine defendant's competency to stand trial.[2] The court noted that those reports indicated that defendant was competent to stand trial because he understood the nature of the charges against him and he understood the nature of the proceedings.

■ We ordered the state to address the issue of the trial court's consideration of these reports because the standard for competency to waive counsel is different from and higher than the standard for competency to stand trial, on which the reports were based. As the Wisconsin Supreme Court has noted:

The standard for determining competency to stand trial is whether one is able to understand the proceedings against him and to assist in his own defense.... This test assumes the defendant will have representation and that he will be required only to assist in his defense. Certainly more is required where the defendant is to actually conduct his own defense and not merely assist in it.

*Pickens v. State,* 96 Wis.2d 549, 292 N.W.2d 601, 610 (1980). The United States Supreme Court has also recognized this higher standard to waive counsel:

One might not be insane in the sense of being incapable of standing trial and yet lack the capacity to stand trial without benefit of counsel.

*Massey v. Moore,* 348 U.S. 105, 108, 75 S.Ct. 145, 147, 99 L.Ed. 135, 138 (1954).

Because the psychiatric reports relied on by the trial court were prepared to determine defendant's competence to stand trial, and not his competence to waive counsel, they alone do not support the trial court's decision to allow defendant to waive counsel. We must therefore examine all the evidence before the trial court when it recognized defendant's right to waive counsel to determine if that evidence supported the conclusion that defendant was competent to make a knowing, intelligent, and voluntary waiver of counsel. *See United States v. Bailey,* 675 F.2d 1292, 1302 (D.C.Cir. 1982), *cert. denied, Walker v. United States,* 459 U.S. 853, 103 S.Ct. 119, 74 L.Ed.2d 104 (1982).

The reports referred to by the trial court were generated during proceedings a year before in an unrelated case. In that case, defendant represented himself, with the assistance of advisory counsel, at a change of plea proceeding. On appeal from that conviction, this court reversed his conviction because the record indicated he had been misled into believing that his guilty plea could be set aside if he later discovered

---

**2.** The two psychiatric reports considered by the trial court were not included in the record on appeal. We normally presume that any documents *missing from the record support the* trial court's actions. *State v. Kerr,* 142 Ariz. 426, 690 P.2d 145 (App.1984). In this case,

however, the state has appended the reports in issue to its answering brief, and this court will allow the reports to be added to the record on appeal. *See* Rule 31.8(a)(2)(iii), *Arizona Rules of Criminal Procedure.*

new evidence of his innocence. *See State v. Mott,* 150 Ariz. 198, 722 P.2d 366 (App. 1986). We did find, however, that defendant knowingly, voluntarily, and intelligently waived his right to counsel. *Id.* at 201, 722 P.2d at 369. Our reversal of his conviction was later vacated and defendant's conviction was affirmed by the Arizona Supreme Court. *See State v. Mott,* 150 Ariz. 79, 722 P.2d 247 (1986). The supreme court noted:

> It would appear that the defendant, even though representing himself, negotiated a very favorable plea agreement, including not only the dismissal of sexual assault charges and the allegation of dangerousness but also the sentence of probation.

*Id.* at 81, 722 P.2d at 249. The Supreme Court then went on to hold that defendant's plea in that case was "voluntarily and intelligently made." *Id.* at 82, 722 P.2d at 250.

█ The trial court had before it this past history of defendant's exposure to criminal proceedings. Furthermore, the record in this case indicates that the trial court observed defendant's demeanor at no fewer than seven pretrial proceedings before allowing defendant to waive counsel. At these appearances, defendant often personally addressed the court, engaging in lengthy discussion about legal matters, and often cited relevant legal authority. The record before the trial court indicates that defendant was literate and had some legal research skills.

Based on the entire record before the trial court at the time it allowed defendant to waive counsel, we find no error in the decision to allow defendant to represent himself. The trial court noted that its previous decision had been erroneously based in part on its own perception that defendant would be better served by appointed counsel than by self-representation, and the court acknowledged this was the incorrect standard. The totality of the circumstances indicates that defendant was capable of making a knowing and intelligent waiver under these facts.

Furthermore, we find that the trial court thoroughly informed defendant of the consequences of such representation, and the potential dangers involved in defendant's decision. We believe defendant faced his trials with "his eyes open." We find no error in the trial court's decision to allow defendant to represent himself.

## IV. DEFENDANT'S CONDUCT AT TRIAL

During the pretrial proceedings after defendant's self-representation began and throughout both trials, defendant was obstinate and disrespectful. Hearings that could have been concluded in minutes lasted hours, due entirely to defendant's delaying tactics. At trial, defendant's behavior worsened. Each trial, expected to take a few days, dragged on for several weeks. Defendant frequently interrupted witnesses, calling them "liars" and "perjurers," and claiming they were part of a conspiracy against him. He made lengthy and repetitive frivolous motions, and refused to comply with the trial court's rulings. During his testimony in CR–140750, defendant referred to himself as a "living legend in my own time." During his testimony in CR–140943, defendant sang an Elvis gospel song to the jury. Throughout both trials, he refused legal help and sought to "fire" his advisory attorney.

On appeal, defendant's appellate counsel contended that "the trial judge should have shackled Mott's feet, shackled Mott's hands and stuffed a gag in his mouth and ordered that his advisory counsel, who was always present in the courtroom and who was under orders to be prepared to take over the case, do just that." We asked the state to respond to the issue whether the trial court erred in allowing defendant to continue to represent himself after these outbursts and antics may have endangered his right to a fair trial.

█ The trial court has a continuing duty throughout trial to order hearings on the issue of a defendant's competency if it becomes aware of any evidence of defendant's incompetency to represent himself that would jeopardize his right to a fair

trial. *Fayle,* 134 Ariz. at 573, 658 P.2d at 226. At several points in each trial, defendant made threatening comments to witnesses and was admonished by the court, who then advised the jury to disregard defendant's statements. At one point, defendant told a witness during questioning by the state, "I'm going to prove you're a liar and I'm going to knock your damned head off." The court warned defendant that, if his conduct persisted, "I will have to take remedial steps and ... force you to be in your chair or go to another court and have you put behind a glass mirror so that you can't do that." At other times in the proceedings, defendant made valid and sustainable objections, and performed effective cross-examination of the state's witnesses.

■ A defendant must bear the consequences of his own representation and may not on appeal complain of the quality of his defense. *Faretta v. California,* 422 U.S. at 834 n. 46, 95 S.Ct. at 2541 n. 46, 45 L.Ed.2d at 581 n. 46. A *pro. per.* defendant cannot obtain reversal because he "alienated" the jury by his own defense tactics. *Rasberry v. State,* 535 S.W.2d 871, 873 (Tex.Cr.App.1976).

The state points out that defendant's conduct during his trials was similar to that of the defendant in *State v. Carter,* 1 Ariz.App. 57, 399 P.2d 191 (1965). In that case, Carter insulted witnesses, the prosecutor, and the trial court, testified to facts in the role of counsel, and the court found that his conduct "went beyond all propriety although repeatedly admonished by the Court." *Id.* at 62, 399 P.2d at 196. The appellate court held that Carter could not benefit on appeal from his own misconduct, particularly when the trial court had "exercised the proverbial patience of Job in dealing with the defendant." *Id.* at 64, 399 P.2d at 198.

■ We point out that the trial judges in each trial similarly extended defendant every courtesy and opportunity to fairly present his case to the jury. Both trial judges instructed the jury to disregard defendant's improper conduct and base the verdict on the evidence presented. We agree with the state that, in spite of defendant's behavior at trial, he received fair trials in both cases. In fact, in one case the jurors acquitted defendant of one count, indicating that his conduct did not affect their ability to fairly deliberate.

In *Faretta,* the court observed in a footnote that the right to self-representation is not a license for misbehavior in the courtroom. 422 U.S. at 834 n. 46, 95 S.Ct. at 2541 n. 46, 45 L.Ed.2d at 581 n. 46. The ninth circuit has recently interpreted the *Faretta* footnote to require revocation of the waiver of counsel only when a defendant's action threatens the dignity of the courtroom. *United States v. Flewitt,* 874 F.2d 669 (9th Cir.1989).

We believe the trial court is better equipped than an appellate court to decide whether security measures or revocation of the right of self-representation should be invoked to preserve the dignity of the courtroom. *See Stewart v. Corbin,* 850 F.2d 492, 497 (9th Cir.1988), *cert. denied,* — U.S. —, 109 S.Ct. 1737, 104 L.Ed.2d 175 (1989). As the ninth circuit has reasoned:

> [T]he appellate court is not in as favorable a position as the trial court to determine the effect of the defendant's disruptive conduct on the proceedings. Even though facial expressions, gestures, and other nonverbal conduct are significant, they cannot be transcribed by the court reporter. Also, the reaction of jurors and witnesses is easily observed by the trial judge but seldom appears in the written record. Therefore, great deference must be given to the decision of the trial court.

*Id.* 850 F.2d at 497–98.

The trial judges in both trials observed the proceedings and carefully instructed the juries. We find no evidence on the record that defendant did not receive fair trials in spite of his conduct during his self-representation. We thus find no error in the trial court's failure to conduct continuing hearings throughout trial on defendant's competency to waive counsel and represent himself.

## V. CONCLUSION

The trial court did not err in finding that defendant was competent to knowingly, intelligently, and voluntarily waive his right to counsel. Furthermore, the trial court was not required to revoke defendant's waiver of counsel because of his conduct during the trials.

Pursuant to A.R.S. § 13–4035, we have searched the record for fundamental error. Having found none, we affirm the convictions and sentences.

BROOKS and CLABORNE, JJ., concur.