772 P.2d 1

**STATE of Arizona, Appellee,**

v.

**Raymond Earl RIGSBY, Appellant.**

No. CR–86–0358–AP/PC.

Supreme Court of Arizona,
En Banc.

March 28, 1989.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, Diane M. Ramsey, Asst. Attys. Gen., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by Carol A. Carrigan, Deputy Public Defender, Phoenix, for appellant.

FELDMAN, Vice Chief Justice.

The jury found Raymond Earl Rigsby guilty of armed robbery as a dangerous offense. Rigsby contends that the trial court erred by not severing his trial from that of his codefendant before opening statements. He also argues that the trial court deprived him of due process in other rulings. We have jurisdiction under Ariz.

Const. art. 6, § 5(3) and A.R.S. §§ 12–102, 13–4031, and 13–4033.

## FACTS

Rigsby and his codefendant, Milton Tucker, robbed a Western Savings & Loan Association office in Mesa. Tucker entered the bank alone. He pulled a gun on a teller, took money, and left. Rigsby was waiting outside in the car. Tucker got in and the two sped away.

The police, however, had the duo under surveillance and gave chase. When the police caught up to them, Tucker fled on foot, while the police arrested Rigsby at the car. Tucker exchanged gun fire with the police until they apprehended him.

Shortly after the grand jury indicted Rigsby and Tucker, Rigsby moved to sever his trial from Tucker's. The court denied this motion. Rigsby's counsel informed the court that one of his trial defenses would be that Rigsby acted out of fear of Tucker. Tucker's counsel also moved to sever the trials, arguing that Rigsby's duress defense conflicted with Tucker's own defenses. The court denied severance again.

On September 19, 1986, Rigsby waived counsel. The judge accepted his waiver, finding that it was a "knowing, intelligent, and voluntary waiver." Reporter's Transcript (RT), Sept. 19, 1986, at 3, 7.

On September 23, 1986, Rigsby objected to a proposed continuance of the trial to October 1, 1986. Under the speedy trial rules, September 28, 1986 was the last day Rigsby could have been tried alone but not the last day he could have been tried jointly with Tucker. Rigsby again requested severance, which the court again denied.

On September 29, 1986, the court denied Rigsby's renewed motion for a court-appointed investigator. The court also denied both Rigsby's and Tucker's new motions to sever.

On October 1, 1986, a jury was selected. The court allowed the defense and prosecution six peremptory strikes each. This meant that Rigsby and Tucker had to agree on or divide their six strikes. The court then read the jury the entire indictment, including the charges against Tucker for aggravated assault with a gun. Both Rigsby and Tucker reurged their motions to sever, which the court again denied.

In chambers the next morning, Rigsby again told the judge that he would present his duress defense in his opening statement. Tucker's counsel moved to sever. The judge again denied the motion, preferring to wait to see if Rigsby actually went forward with a defense that prejudiced Tucker.

The prosecutor made her opening statement, describing Tucker's shootout with the police as leaving a "trail of blood." Rigsby then made his opening statement, raising the duress defense. He told the jury that the evidence would show that he knew of Tucker's prior criminal record, was afraid of him, and participated in the crime out of fear. Tucker's counsel immediately moved for severance and a mistrial. The judge granted the severance and mistrial motions, but only as to Tucker. Rigsby's trial continued with the same jury, despite his motion to dismiss for lack of a speedy trial.

The jury convicted Rigsby of armed robbery as a dangerous offense and the judge sentenced him to life imprisonment.

## ISSUES PRESENTED

Rigsby raises several issues:

A. Refusal to timely grant severance caused several prejudicial errors and denied him a speedy trial;

B. The trial court's failure to make him aware of the dangers of self-representation violated due process; and

C. The trial court's failure to provide a court-appointed investigator violated due process.

## DISCUSSION

### A. Severance

Rigsby argues that the judge's failure to grant the severance motions denied him a fair trial for several reasons: First, Rigsby claims that the court's reading of Tucker's indictment and the prosecutor's opening

statement describing Tucker's "trail of blood" prejudiced Rigsby's jury. Second, the court denied him his full number of peremptory jury challenges because he had to share his six with Tucker, as required by Rule 18.4(c)(2), Ariz.R.Crim.P., 17 A.R.S. (hereafter Rule ——). Third, not granting severance until after his opening statement denied him a speedy trial because the judge scheduled the trial for October 1, which was within the time limits for trying Tucker or the two defendants together, but not within the time limit for trying Rigsby alone.[1]

We successively deal with each severance argument.

### 1. *Duress and Jury Inflamation*

■ Rigsby argues that the judge knew long before trial that Rigsby would raise a duress defense and that Tucker would raise an alibi defense. Because these defenses are mutually exclusive, the judge should have granted severance under Rule 13.4.

The trial court ordinarily has broad discretion on joinder or severance of codefendants' trials. *See* Rule 13.3; *State v. Tipton*, 119 Ariz. 386, 388, 581 P.2d 231, 233 (1978). However, Rule 13.4 provides that a defendant has a right to severance only when the offenses are joined because they are of the same type. That is not the case here. The offenses charged against Rigsby and Tucker were not merely the same type, they were the same act—the bank robbery. Thus, our criminal procedure rules required the judge to sever only if necessary to provide the defendant a fair trial. Rule 13.4(a).

Rigsby correctly notes that our cases require severance when the codefendants have mutually exclusive defenses. *State v. Cruz*, 137 Ariz. 541, 544–45, 672 P.2d 470, 473–74 (1983). To be mutually exclusive, defenses must be so antagonistic that the jury cannot believe both. *Id.* at 544–45, 672 P.2d at 473–74. Rigsby's duress defense was certainly antagonistic to Tucker's alibi defense. However, the judge granted *Tucker's* motion to sever and mistrial motion after he became convinced that Rigsby's opening statement had *prejudiced Tucker.*

Rigsby contends that the judge prejudiced his case by failing to sever before the prosecutor's opening statements. The prejudice, claims Rigsby, arose from the prosecutor's tale of Tucker's gun battle with the police, including the statement that Tucker left a "trail of blood." We disagree. Rigsby's defense was duress—that he committed the acts because he was afraid of Tucker's past record of violent crimes. Rigsby raised this defense in both his opening and closing statements, stating that he "feared Tucker just might shoot me if I never did what he said by the fact that I had prior knowledge that Tucker in the past had committed two other armed robberies and a kidnapping." RT, Oct. 2, 1986, at 18; *see also* RT, Oct. 7, 1986, at 25. We simply fail to see how the prosecutor harmed Rigsby's case by telling the jury about Tucker's violent acts when Rigsby's defense was that he acted in fear of Tucker's violent, dangerous nature. We can hardly allow Rigsby to complain that the prosecutor made known Tucker's "trail of blood" when Rigsby eagerly asked the jury to inspect the same trail.

### 2. *Jury Selection/Preemption*

■ Rigsby argues that because the court joined his case with Tucker's until his opening statement, the court denied him the right to his full number of peremptory challenges to jurors. Under Rule 18.4(c)(2), the trial court granted six peremptory challenges to each side, with Rigsby exercising three challenges and Tucker exercising the other three. Because the judge delayed severing the trials, Rigsby claims prejudice from not receiving six peremptory challenges.

---

1. Rigsby also raises the lack of speedy trial argument as a separate ground for reversal. The basis of the argument is that lack of an early severance denied him his right to a speedy trial. However, Rule 8.4(e) allows for time period exclusion when computing speedy trial limits when "good cause for denying severance" exists. Thus, Rigsby's independent speedy trial argument is bound to the severance issue and we do not treat it separately.

Our constitution only requires the court to strike jurors for cause; it does not guarantee peremptory challenges. *See* Ariz. Const. art. 2, § 24 (defendant's right to impartial jury guaranteed). The right to peremptory challenges, however, is a legal right that the court cannot impair. *State v. Thompson,* 68 Ariz. 386, 390, 206 P.2d 1037, 1039–40 (1949); *see also Wasko v. Frankel,* 116 Ariz. 288, 290, 569 P.2d 230, 232 (1977) (civil case disavowing trial court procedures that forced party to use peremptory challenge to strike jurors that the court should have stricken for cause). But, we have long held that all litigants on one side of a case constitute a "party" within the meaning of our peremptory challenge statutes, even though the several litigants may have antagonistic positions. *Moran v. Jones,* 75 Ariz. 175, 178, 253 P.2d 891, 892–93 (1953). Further, disagreement between codefendants concerning peremptory challenges does not entitle each codefendant to the full number of challenges otherwise available to a single defendant. *State v. Bojorquez,* 111 Ariz. 549, 555, 535 P.2d 6, 12 (1975). This principle comes to us from territorial days. *See Booth v. Territory of Arizona,* 9 Ariz. 204, 208, 80 P. 354, 355 (1905) (recognizing rule for splitting peremptory challenges between codefendants under joint indictment). Rule 18.4(c)(2) codified these cases and required Rigsby and Tucker to share their peremptory strikes.

Enforcing that rule deprived Rigsby of no constitutional or statutory right. The fact that the judge later granted severance did not turn proper procedure into error. We certainly cannot adopt a rule that every time a trial judge finds it necessary to sever or mistry one codefendant after trial has begun, he must declare a mistrial as to all other defendants.

### 3. *Speedy Trial*

■ Rigsby argues that under Rule 8.2, the last day the court could have brought him to trial individually was September 28, 1986. However, because his trial was joined with Tucker's, whose last day for trial was October 5, Rigsby's trial was delayed until October 1. The state answers that because Rigsby's trial was joined with Tucker's, Rule 8.4(e) allowed for the delay. We agree.

Rule 8.4(e) allows for trial delay when a defendant is tried with a codefendant "as to whom the time limits [of Rule 8] have not run." However, "good cause for denying severance" must exist. *Id.* Provided the trial judge had "good cause" to deny the severance, he did not err in bringing Rigsby to trial on October 1 rather than September 28. The trial judge delayed granting severance to assure himself that severance was required. We believe this delay was within the boundaries of "good cause." Consequently, the denial was not an abuse of the trial judge's discretion and we find no error. *Cf. State v. Hankins,* 141 Ariz. 217, 222, 686 P.2d 740, 745 (1984).

### 4. *Delay in Granting the Severance Motion*

■ Finally, we deal here with a delay rather than a denial of severance. Situations can exist in which the trial judge's delay in granting severance may cause prejudice requiring reversal. This case is not one because Rigsby was not the person entitled to severance. His defense was antagonistic to Tucker's, but Tucker's was not antagonistic to Rigsby's. It was to Rigsby's benefit to be tried with Tucker so that the jury could hear the prosecution allege Tucker's violent nature, menacing attitude, and heinous acts. All of this strengthened Rigsby's duress defense.

When Rigsby made his opening statement, it was Tucker who moved for a severance and the judge granted him the mistrial. If Tucker had not moved for severance, Rigsby would have had no complaint. Thus, Rigsby's argument in its simplist form is that he should receive a new trial because the court delayed, perhaps too long, in giving Tucker a severance. We find this argument unpersuasive. In the final analysis, delay in granting Tucker's severance caused Rigsby no harm. His trial was delayed only two days. Also, on the jury selection issue, Rigsby either had agreed on the use of the peremptory chal-

lenges or had sole discretion with three instead of six. Rigsby does not tell us what difference this might have made in his trial.

Further, the judge evidently based the delay in severing on his decision to see just what Rigsby would actually tell the jury. The judge stated that he was dealing with a "pro per [defendant] with five priors" and was "not sure what [was] going to happen till it happens." RT, Oct. 2, 1986, at 4. We do not believe the judge's well-founded skepticism and the consequent delay in ruling was an abuse of discretion.

## B. Waiver of Counsel

■ Rigsby argues that the record does not show that the trial court informed him of the dangers and disadvantages of self-representation. Thus, he contends that nothing indicates he made a knowing waiver of his right to representation.

This argument does not persuade us. Rigsby had a right to represent himself if he so chose. *See Faretta v. California*, 422 U.S. 806, 819–20, 95 S.Ct. 2525, 2533, 45 L.Ed.2d 562 (1975). Rigsby clearly made known his intention to invoke his right to represent himself, and the court specifically found that he was "competent" and made a "knowing, intelligent, and voluntary waiver...." RT, Sept. 19, 1986, at 7. Rule 6.1(c) specifically allows a defendant to waive his rights to counsel "after the court has ascertained that he knowingly, intelligently and voluntarily desires to forego them." Here, the court determined Rigsby's competence after a discussion where Rigsby, in an articulate manner, expressed his desire to defend himself. The constitution requires no more of the judge. *See State v. Martin*, 102 Ariz. 142, 145, 426 P.2d 639, 642 (1967) (citing *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)). Additionally, the trial court took the added precaution of appointing advisory counsel to aid Rigsby in his defense, even though Rule 6.1 does not require advisory counsel.

Finally, we note from our independent review of the record that Rigsby competently represented himself at trial. He for-mulated and presented his statements and arguments on opening and closing and showed his understanding of trial procedures on numerous occasions. Rigsby had considerable experience with the criminal justice system. He knew of the dangers of self-representation and cannot now complain that he faced them without understanding the risks inherent in his choice.

## C. Court's Refusal to Grant Investigator

■ On July 9, 1986, Rigsby's counsel moved for appointment of a private investigator because of the magnitude of the case and severity of the charges. Rigsby renewed this motion on September 29, 1986, but the court denied it. Rigsby relies on *Mason v. Arizona*, 504 F.2d 1345 (9th Cir. 1974), *cert. denied*, 420 U.S. 936, 95 S.Ct. 1145, 43 L.Ed.2d 412 (1975), to support his claim that due process required him to have investigative assistance for effective preparation of his defense. In *Mason*, however, the court held that it would only reverse a conviction if the trial judge failed to grant an indigent defendant investigative assistance when the defendant showed as completely as possible his need for assistance. *Id.* at 1352. Although Rigsby explained at trial that he wished his investigator to interview potential witnesses, the court determined that Rigsby already had access to any information this investigator could have obtained.

An accused's right to self-representation does not mean that a defendant has an unlimited right to books, witnesses, and investigators that he may feel necessary to adequately represent himself. *State v. Yanich*, 110 Ariz. 172, 176, 516 P.2d 308, 312 (1973). Thus, a defendant must demonstrate how the lack of an investigator prejudiced him. *State v. Lamar*, 144 Ariz. 490, 495, 698 P.2d 735, 740 (Ct.App.1984). Here, Rigsby has not explained on appeal what he lost by not having an investigator. The trial court did not err by denying Rigsby's motion for an investigator.

## CONCLUSION

After considering Rigsby's issues and independently reviewing the record for fun-

damental error, we find no grounds for reversal. Judgment and sentence affirmed.

GORDON, C.J., and CAMERON, MOELLER and CORCORAN, JJ., concur.