NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

ETHAN DANE GIPSON, *Appellant.*

No. 1 CA-CR 18-0066
FILED 4-28-2020

---

Appeal from the Superior Court in Maricopa County
No. CR2013-459705-001
The Honorable Warren J. Granville, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Janelle A. McEachern Attorney at Law, Chandler
By Janelle A. McEachern
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge David B. Gass joined.

---

**C R U Z**, Judge:

¶1        Ethan Dane Gipson ("Gipson") appeals his convictions and sentences for seven counts of sexual conduct with a minor and one count of attempt to commit sexual conduct with a minor.  After searching the entire record, Gipson's defense counsel identified no arguable question of law that is not frivolous.  Therefore, in accordance with *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969), defense counsel asked this court to search the record for fundamental error.  Gipson filed a supplemental brief *in propria persona*.[1]  After reviewing the entire record, we find no error.  Accordingly, we affirm Gipson's convictions and sentences.

## FACTS AND PROCEDURAL HISTORY

¶2        "We view the facts in the light most favorable to sustaining the convictions with all reasonable inferences resolved against the defendant."  *State v. Harm*, 236 Ariz. 402, 404, ¶ 2 n.2 (App. 2015) (quoting *State v. Valencia*, 186 Ariz. 493, 495 (App. 1996)).

¶3        Gipson sexually abused his daughter, S.G., from the age of thirteen until she reported the abuse at age sixteen.  At thirteen, S.G. became pregnant.  At fourteen, she gave birth to Baby Boy Doe and gave him up for adoption (Count 1).  Gipson impregnated his daughter a second time but took her to a clinic to end the pregnancy (Count 2).  At least once, the defendant lubricated his penis with KY Jelly before holding S.G. down during intercourse (Counts 3 and 4).  In another encounter, Gipson used a vibrator on S.G. before intercourse (Counts 5 and 6).  S.G. also recalled an instance where the defendant requested oral sex from her (Count 7).  S.G. refused, and the defendant had penile/vaginal intercourse with her instead (Count 8).  Gipson sexually abused his daughter for the last time on October 23, 2013, two days before she reported the abuse to police (Count 9).

¶4        Gipson was arrested and charged with seven counts of sexual conduct with a minor and one count of kidnapping, all Class 2 felonies, as well as one count of attempt to commit sexual conduct with a minor, a Class 3 felony.  Count 1 was further alleged to be a dangerous crime against a

---

[1]        We granted Gipson's first eight continuances to file a supplemental brief.  Per this court's order, his supplemental brief was due on July 22, 2019.  Gipson filed supplemental briefs on December 16, 2019, and December 26, 2019.  Gipson raises over 120 errors and issues on appeal.  Due to the untimely filing, we struck Gipson's briefs.  We nevertheless considered the issues raised in these briefs.

child. The State alleged several aggravating circumstances, including that the defendant abused his position of trust over S.G. Gipson pleaded not guilty to all counts.

¶5 After changing attorneys several times, Gipson requested to represent himself. The court advised Gipson of his right to counsel, the responsibilities of self-representation, and the potential consequences if the alleged charges were proven. The court found that Gipson knowingly, intelligently, and voluntarily waived his right to counsel.

¶6 At trial, S.G. testified about the years of sexual abuse. She and Gipson shared a one-bedroom apartment and slept in the same bed. Police officers searched the apartment and found KY Jelly inside the bedside table and a vibrator on the floor by the bed. The State's DNA expert testified that a paternity test showed Gipson to be the biological father of Baby Boy Doe. The jury also heard evidence that a partial DNA profile found on S.G.'s external genitalia matched Gipson's DNA. A blind expert, Dr. Wendy Dutton, testified about the different ways children respond to sexual trauma, including delayed and piecemeal disclosure, and difficulty remembering specific instances of abuse.[2] At the close of the State's case, Gipson moved for Arizona Rule of Criminal Procedure 20 judgment of acquittal. Finding that there was substantial evidence on all counts to be submitted to the jury, the court denied the motion.

¶7 Gipson testified at trial. He did not dispute the results of the paternity test. Instead, he claimed S.G. became pregnant not through intercourse but by masturbating with a rubber glove covered in his sperm. Gipson called an obstetrician, who testified that Gipson's theory was unlikely, but possible. Gipson also admitted to buying the vibrator for S.G.'s use. Gipson denied any sexual relations with his daughter on the stand, but the jury heard a one-party consent call between S.G. and Gipson and a police interview with Gipson. In both, he made no such denials. Finally, Gipson's DNA expert agreed with the State's DNA results: Gipson is the biological father of Baby Boy Doe and his DNA matched the profile found on S.G.'s external genitalia.

¶8 After a twenty-six-day trial, the jury convicted Gipson of seven counts of sexual conduct with a minor and attempt to commit sexual conduct with a minor, but acquitted Gipson of kidnapping (Count 4).

---

[2] A "cold" or "blind" expert has "not reviewed any case-specific evidence and [does not] testify about any of the events in the case." *State v. Haskie*, 242 Ariz. 582, 584, ¶ 5 (2017).

Because an element of the offenses was Gipson being in a position of trust over S.G., the court found that the aggravating factor was proven. For Count 1, the court sentenced Gipson as a dangerous, non-repetitive offender to twenty-seven years imprisonment. For Counts 2, 3, 5, 6, 8, and 9, the court sentenced Gipson as a non-dangerous, non-repetitive offender to five years imprisonment. For Count 7, the court sentenced Gipson to three-and-one-half years. The sentences for Counts 5 and 6, as well as Counts 7 and 8, were ordered to run concurrent to each other, and then consecutive to all other counts. All counts, except Count 7, are flat time. The court credited Gipson with 1,493 days of presentence incarceration on Count 1. Gipson timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

¶9 We review Gipson's convictions and sentences for fundamental error. *See State v. Flores*, 227 Ariz. 509, 512, ¶ 12 (App. 2011). Gipson's counsel advised this court that after a diligent search of the entire record, counsel found no arguable question of law. We have read and considered counsel's brief, the issues identified in Gipson's supplemental briefs, and fully reviewed the record for reversible error, and find none. *See Leon*, 104 Ariz. at 300.

¶10 As a preliminary matter, our review of the record found that the prosecutor vouched for S.G. in the State's rebuttal close when the prosecutor told the jury that S.G. was telling the truth. However, we decline to order briefing on this issue and affirm Gipson's convictions. First, the court instructed the jury that anything said in closing arguments was not evidence, and we presume that the jurors followed the court's instructions. *State v. Newell*, 212 Ariz. 389, 403, ¶ 68 (2006). Additionally, a prosecutor's improper comments do not require reversal of a conviction unless there is a "'reasonable likelihood' that the 'misconduct could have affected the jury's verdict.'" *Id.* at ¶ 67 (citation omitted). When considered in the context of the twenty-six-day trial, the five days of cross-examination of S.G., and the overwhelming evidence of guilt, we cannot say that the prosecutor's comments affected the jury's verdict.

¶11 We have also reviewed the issues raised in Gipson's supplemental briefs. We decline to address issues made without argument or raised for the first time on appeal, but nevertheless review for fundamental error. *See State v. Carver*, 160 Ariz. 167, 175 (1989). First, Gipson argues that the jury instructions were in error. Jury instructions are

4

not required to be "faultless" but must adequately reflect the law. *State v. Rutledge*, 197 Ariz. 389, 393, ¶ 15 (App. 2000) (citation omitted). Here, the court properly instructed the jury on the elements of the charged offenses, the State's burden of proof, and Gipson's presumption of innocence. We find no error.

**¶12**　　　　Gipson next argues that the court erred by precluding statements that S.G. previously said another boy was the father of Baby Boy Doe. When the defense wishes to present evidence of prior false accusations, "the court has considerable discretion in determining whether the probative value of the evidence is substantially outweighed by its unfairly prejudicial effect." *State v. Gilfillan*, 196 Ariz. 396, 405, ¶ 29 (2000) *abrogated on other grounds by State v. Carson*, 243 Ariz. 46 (2018); *see* A.R.S. § 13-1421. Here, the court found that the evidence was irrelevant and that the risk of confusion outweighed any probative value. *See* Ariz. R. Evid. 403. The court did not abuse its discretion.

**¶13**　　　　Gipson also argues that the court violated his Sixth Amendment right to confront a witness when the court ended his cross-examination of S.G. after five days. The right to cross-examine a witness "is not without boundary, and trial judges 'retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on . . . cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.'" *State v. Carreon*, 210 Ariz. 54, 63, ¶ 36 (2005) (citations omitted). Here, the court warned Gipson to ask only relevant questions. The court also found Gipson was conducting a "microscopic examination" of S.G., stating that the questioning was redundant and abusive. There is no error.

**¶14**　　　　Finally, Gipson contends that there was insufficient evidence to support the verdict. A person is guilty of sexual conduct with a minor, a Class 2 felony, if he "intentionally or knowingly engag[ed] in sexual intercourse or oral sexual contact with . . . a minor who is at least fifteen years of age . . . [and he] is or was in a position of trust." A.R.S. § 13-1405. Sexual conduct with a minor who is under fifteen years of age is a dangerous crime against a child. A.R.S. § 13-705(Q)(1)(e). And a person commits attempt if he "[i]ntentionally does or omits to do anything which, under the circumstances as such person believes them to be, is any step in a course of conduct planned to culminate in commission of an offense." A.R.S. § 13-1001(A)(2). The record contains sufficient evidence upon which the jury could determine beyond a reasonable doubt Gipson was guilty of the charged offenses.

**¶15** Further, all of the proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure. So far as the record reveals, counsel represented Gipson at all stages of the proceedings, or Gipson otherwise knowingly waived his right to counsel. *See State v. Conner*, 163 Ariz. 97, 104 (1990) (right to counsel at critical stages); *State v. Rigsby*, 160 Ariz. 178, 182 (1989) (right to waive right to counsel). The jury was properly comprised of twelve jurors, and the record shows no evidence of jury misconduct. *See* A.R.S. § 21-102(A). At sentencing, Gipson was given an opportunity to speak, and the court stated on the record the evidence and materials it considered, and the factors it found in imposing the sentences. *See* Ariz. R. Crim. P. 26.10. Additionally, the sentences imposed were within the statutory limits. *See* A.R.S. §§ 13-701 to -709.

**¶16** Defense counsel's obligations pertaining to Gipson's representation in this appeal have ended. Defense counsel need do no more than inform Gipson of the outcome of this appeal and his future options, unless, upon review, counsel finds an issue appropriate for submission to the Arizona Supreme Court by petition for review. *State v. Shattuck*, 140 Ariz. 582, 584-85 (1984). Gipson has thirty days from the date of this decision to proceed, if he wishes, with an *in propria persona* petition for review. *See* Ariz. R. Crim. P. 31.21. On our own motion, we also grant Gipson thirty days from the date of this decision to file an *in propria persona* motion for reconsideration.

**CONCLUSION**

**¶17** We affirm Gipson's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED: AA