NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

JUSTIN DWAYNE HILL, *Appellant*.

No. 1 CA-CR 19-0377
FILED 1-27-2022

Appeal from the Superior Court in Maricopa County
No.  CR2017-006213-001
The Honorable Frank W. Moskowitz, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Linley Wilson
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Robert W. Doyle
*Counsel for Appellant*

## MEMORANDUM DECISION

Judge Samuel A. Thumma delivered the decision of the Court, in which Presiding Judge Kent E. Cattani joined. Judge Brian Y. Furuya concurred in part and dissented in part.

T H U M M A, Judge:

¶1 Defendant Justin Dwayne Hill appeals his burglary convictions and resulting sentences. Hill argues reversible error in the State's closing argument, in admitting testimony from police officers and in denying his motion for self-representation. Because he has shown no error, Hill's convictions and resulting sentences are affirmed.

## FACTS AND PROCEDURAL HISTORY

¶2 In the predawn hours one day in April 2015, four West Valley businesses were burglarized by a person driving a white sport utility vehicle. Verrado Coffee Company, in Buckeye, was the first. A few hours later, Juice It Up, Casa De Yogurt and Chipotle Mexican Grill, all in the same Buckeye shopping center, were burglarized. Police obtained surveillance videos, but made no arrest at the time. A few weeks later, a Roliberto's Mexican Restaurant near El Mirage was burglarized at about 4:00 a.m. Several minutes later, police officers responded to a nearby car accident involving Hill and his white Isuzu Rodeo. Later that day, one of the responding officers (who, at trial, identified Hill without objection) reviewed still images of the video from the Roliberto's burglary. Those images showed a male "wearing a dark hooded sweater over a baseball cap" that appeared to be what Hill "was wearing that same morning of the collision." Officers then arrested Hill.

¶3 During their investigation, officers recovered fingerprints from Verrado Coffee and Chipotle that were identified as Hill's. The State charged Hill with one count of theft (count 1), and five counts of burglary in the third degree (counts 2–6).

¶4 At trial, the State presented surveillance video and photos from the burglaries, as well as expert testimony from a fingerprint analyst. Police officers testified that the clothing Hill was wearing when he was in the accident was similar to the clothing worn by the individual in the surveillance video. The State argued that Hill used the same approach to

commit all of the burglaries, including smashing the front store window with a heavy object, opening the cash register and going to the back area to look for other valuables. Hill elected to not testify at trial, as was his right.

**¶5** After deliberating, the jury found Hill guilty on the burglaries of Verrado Coffee and Chipotle, the only counts for which fingerprint evidence was presented. The jury was unable to reach a unanimous verdict on the remaining charges, which were later dismissed. Given his criminal history, Hill was sentenced as a Category 3 repetitive offender to two maximum, concurrent terms of 12 years in prison. This court has jurisdiction over Hill's timely appeal pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes (A.R.S.) §§ 12-120.21(A)(1), 13-4031 and 13-4033(A) (2022).[1]

## DISCUSSION

**I.** **Hill Has Not Shown that the Superior Court Abused Its Discretion In Denying His Motion for Mistrial Based on the State's Reference to Facts Not In Evidence During Closing Argument.**

**¶6** Hill argues the superior court abused its discretion in allowing the State to refer to facts not in evidence during closing argument and denying his motion for mistrial. A mistrial is "the most dramatic remedy for trial error and should be granted only when it appears that justice will be thwarted" unless a new trial is granted. *State v. Adamson*, 136 Ariz. 250, 262 (1983). The denial of a motion for mistrial is reviewed for an abuse of discretion. *State v. Burns*, 237 Ariz. 1, 25 ¶ 105 (2015). Where a defendant properly objects on the ground of prosecutorial misconduct and preserves the issue for review, this court reviews for harmless error. *State v. Morris*, 215 Ariz. 324, 335 ¶ 47 (2007). Prosecutorial misconduct warrants reversal if (1) error occurred and (2) "a reasonable likelihood exists that the misconduct could have affected the jury's verdict, thereby denying [the] defendant a fair trial." *Morris*, 215 Ariz. at 335 ¶ 46. Prosecutorial misconduct is harmless if this court finds beyond a reasonable doubt that it did not contribute to or affect the verdict. *State v. Hughes*, 193 Ariz. 72, 80 ¶ 32 (1998).

---

[1] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

¶7          The State's fingerprint expert Penny Dechant testified that Hill's known fingerprints matched fingerprints left at Verrado Coffee and Chipotle. Dechant did not testify to comparing Hill's prints with those in any database. Instead, to avoid concerns surrounding the admission of evidence of a criminal database used in fingerprint comparisons when formulating a response to jury questions of Dechant, the parties stipulated that the known fingerprints used in the comparison came from Hill.

¶8          During closing, Hill's counsel argued that Dechant was biased and "not independent" and that "fingerprints are subjective." Hill's counsel added that Dechant "was only asked to examine one person's known print" and compared Hill's "known print to the unknown profile." At sidebar, the State argued "that is flat wrong," adding "[d]efense counsel knows we put that into a database. We compared it against a lot of other people." Noting the State "believes that" Hill's counsel "said something incorrect," the court indicated it would allow the State to "correct it on rebuttal." In continuing to address the jury, Hill's counsel then said "[j]ust so we're clear, . . . there was one set of known prints that the analyst analyzed. . . . I don't want there to be any confusion about that, but that's one person that she had a known set of prints for [that] she analyzed," adding "there is a built in bias because she works for the police department."

¶9          During rebuttal closing, after noting that "lawyers comments are not evidence," the State continued that "[d]efense counsel said there was only one sample that she tested against. When she started testing, she had no idea who it was. She tested against the whole database." Hill timely objected, arguing "[n]ot in evidence," and the court stated "[t]he record will reflect that it is or it isn't. It's up to the jury." The State then continued: "So this whole argument that she only tested one person, is factually incorrect. Factually incorrect. Because again, as you all know, they didn't know who it was at first. They had to check against the database. Just another example of something that was not correct what was said."

¶10         After jury deliberations began, Hill moved for a mistrial "primarily" based on the assertion that the State's rebuttal argument included facts not in evidence when referencing "some database" used by the fingerprint analyst. The State responded that it "said that the unknown prints were compared against the database." The State conceded, however, that there was no trial evidence that the unknown prints were compared against the database. The court then recalled stating the State "could in rebuttal address whatever the evidence actually was to correct the statement. I couldn't imagine that you would take that to mean you could talk about something that wasn't in evidence to correct that statement."

Ultimately, the court denied the motion for mistrial, concluding that the issue did not "come[] close to a mistrial. Because there was a lot of facts, a lot of issues and a lot of things discussed and argued about fingerprint evidence."

¶11            On appeal, the State concedes that the prosecutor improperly referenced facts not in the trial record in arguing the fingerprints were compared against a database. Accordingly, it was improper for the State to argue during rebuttal that "[s]he tested against a whole database." *See State v. Leon*, 190 Ariz. 159, 163 (1997) ("[N]othing justifies going outside the record to suggest that there are facts not in evidence refuting the other side's remarks."). The remaining issue is whether there is a "reasonable likelihood" that the improper statement could have affected the verdict and denied Hill a fair trial. *Morris*, 215 Ariz. at 335 ¶ 46.

¶12            Hill has not shown that the improper reference to the database could have affected the verdict. The reference was brief and isolated and made during rebuttal closing argument. Hill timely objected and the court noted that the trial "record will reflect that it is or it isn't. It's up to the jury." In fact, it was not in the trial record, meaning the jury had no basis to conclude that it was. In addition, the court properly instructed that it was required to determine facts based on evidence presented and that what the lawyers said was not evidence.

¶13            Hill stipulated that the known prints used by Dechant were his. Hill's challenge to the results were that they were "subjective, biased and unscientific," not that they used the wrong source for comparison. Accordingly, the origin of the known prints was not disputed. Moreover, the brief reference in closing to a "database" did not state that the database was one containing fingerprints from individuals with a criminal record. Furthermore, and in any event, the prosecutor did not state or otherwise suggest that Hill's "known" prints were obtained through or from a "criminal" database.

¶14            The Dissent [at ¶¶ 42–47] concludes that the States' improper arguments were not harmless, focusing largely on jury questions asked of the fingerprint analyst during trial, one question asked during deliberations and the verdicts returned. Those questions and the verdict, however, do not show the superior court erred in denying Hill's motion for mistrial.

¶15        The jury was active in proposing questions to be asked of the witnesses. *See* Ariz. R. Crim. P. 18.6(e). Nineteen witnesses testified at trial. The jury submitted 54 numbered questions to be asked of those witnesses. Three of those questions were directed to Dechant, the fingerprint analyst.

¶16        Question 51 asked: "Who provided the comparison for Mr. Hill's fingerprints, meaning who gave you Mr. Hill's finger prints?" In response, the parties stipulated "that the known sample of fingerprints came from the defendant" and the court read that stipulation to the jury. Question 53 asked: "Did you do the ACEV process on latent prints from Casa de Yogurt, Juice It Up and/or Roliberto's? If so, what was the result?"[2] Over the State's objection, the court asked the question; the analyst testified that she did not "recall the addresses they came from" and the parties then stipulated "that there were no latent prints taken from the locations in the question, which was Casa De Yogurt, Juice It Up, and Roliberto's."

¶17        Question 52 asked several questions: "Is there an actual finger print database? When you make an 'identification' and scan the print into the computer is it 'run' through a program to compare against other prints in the database? Was this done in this case? Or is this a fake CSI idea?" Hill objected, citing Arizona Rule of Evidence 403, and the State agreed "that we don't want to get into possible – the defendant's prints were previously in the database." Accordingly, the court did not ask Question 52.

¶18        As the Dissent [at ¶¶ 44–46] indicates, the jury asking these questions of the fingerprint analyst reflects a focus on the fingerprint testimony it had just heard. But the jury similarly focused on testimony by other witnesses in asking questions. Moreover, the jury's focus on fingerprint evidence in asking questions, both temporally and substantively, is not surprising. *See State v. Hoskins*, 199 Ariz. 127, 143 ¶ 58 (2000) (noting fingerprints and possession of a victim's property is "strong" evidence of guilt).

---

[2] The fingerprint analyst testified to using a standard for fingerprint verification called "ACE," which she testified stands for "analysis, comparison and evaluation." In discussing Question 53 outside of the presence of the jury, the court clarified that the "ACEV" reference in the question was to the ACE verification system.

¶19      The jury also was active in asking questions during deliberations, asking seven questions during the three days of deliberation. One such question, asked during the first day of deliberations and a week after the fingerprint analyst testified, was: "Were the fingerprints 'matched' by a computer system or just by the human eye comparing it." After hearing from the parties, the court stated "I don't know what the term 'matched' means. It is in quotes, single quotes. But I don't know if they're talking about when the forensic scientist did her comparison, did she use a computer system or just use her eyes and training? I don't know if that's what they're asking. Or if they're asking about the completely separate issue which is: Was he first found through an AFIS search?" The court then recounted "the only evidence about matching that was in evidence, that I recall, was the comparison that she did with the known fingerprints that everyone stipulated to were of Mr. Hill."

¶20      In response, Hill's counsel characterized the question as asking about when the analyst "did the known print to the unknown print comparison, and then the – I believe they're talking about the verification, that – was it simply done by the human eye or was there some type of computer system that – that did the verification process? That's my reading of the question, Judge." The court responded that "the answer . . . would just depend on what the forensic expert testified on how she did her comparison." After hearing from both parties, and noting "the reason I denied the mistrial motion was because it was just one of many pieces of evidence about fingerprints" and the final instruction that "closing arguments are not evidence," without objection by Hill's counsel, the court instructed the jury: "Please rely upon the testimony and other evidence admitted during the trial and remember that the lawyers' closing arguments are not evidence." No subsequent questions addressing fingerprint evidence were asked during deliberations, and there is no reason to believe that the jury failed to follow this directive. *See State v. Newell*, 212 Ariz. 389, 403 ¶ 68 (2006).

¶21      Finally, the Dissent [at ¶ 46] correctly notes that Hill was convicted of the charges where fingerprint evidence linked him to the offenses, and the jury was unable to reach a verdict on those charges lacking fingerprint evidence. That distinction, however, is consistent with a century of Arizona case law acknowledging the force and power of fingerprint evidence. *See, e.g., State v. Burton*, 144 Ariz. 248, 252 (1985) ("Fingerprints are direct evidence and their presence alone can be sufficient to prove guilt beyond a reasonable doubt."); *State v. Brady*, 2 Ariz. App. 210, 213 (1965) ("It is well established in our state that a crime may be proven by circumstantial evidence alone, and that fingerprints are a means of positive

identification by which a defendant may be linked with the commission of the offense.") (citing *Moon v. State*, 22 Ariz. 418 (1921)).

¶22    This court presumes that jurors follow the superior court's instructions, *see Newell*, 212 Ariz. at 403 ¶ 68, and Hill has offered nothing to suggest they did not do so here. Moreover, the court considered the issue and concluded that a mistrial was not indicated, a decision to which this court owes deference. *See Jones*, 197 Ariz. 290, 304 ¶ 32 (2000). The record presented provides no basis from which to conclude that the presentation of fingerprint evidence was improper or denied Hill his right to a fair trial. Although Hill challenged the fingerprint evidence presented, he did not present expert testimony to rebut the State's expert. Instead, Hill's counsel argued that the State's expert was "biased," and suggested that only one set of fingerprints had been compared to the prints taken from the crime scenes. Accordingly, on this record, Hill has not shown the brief and isolated reference to a database in rebuttal closing argument provided a "reasonable likelihood" that the improper statement could have affected the verdict and denied Hill of a fair trial. *Morris*, 215 Ariz. at 335 ¶ 46. Thus, Hill has shown no error in the superior court denying his mistrial motion.

## II.    The Superior Court Did Not Allow the State to Improperly Shift the Burden of Proof.

¶23    Along with challenging the fingerprint expert's analysis, Hill's closing argument gave examples of further investigation law enforcement could have undertaken but did not. In rebuttal closing, the State noted the final instructions provided that Hill "is not required to produce evidence of any kind" and the State had the "burden to prove everything" by proof beyond a reasonable doubt. The State continued that Hill's

> decision not to provide any evidence is not evidence of guilt. It's not. Just because the defense didn't prove – didn't submit any evidence whatsoever doesn't prove anything. It's still the State's presumption, but let me be clear about something. The defense can. They have the same subpoena powers as the State.

Hill's counsel objected, stating "[b]urden shifting, Judge;" the State responded "I have been very clear about the burden, Judge;" and the court directed "[m]ove on, Counsel."

**¶24**       The State then asserted "[t]he defense has the exact same ability to call a witness as the State does. They could have called somebody." Referencing the challenges to the fingerprint analysis, the State continued "[w]hy didn't they put somebody on the stand if there is so many of these people out there that are saying, oh, there is a different way of thinking of fingerprints, and even though for the last 100 years everybody in the world has known that fingerprints can identify somebody, suddenly that is different today and there's expert[s] all over the place saying that. Where are they." Hill's counsel objected, arguing burden shifting and that the defense did not have to call witnesses. At sidebar, when the State responded that it was "allowed to mention" that Hill was "able to do that," the court said "I think you have though. I think you've made your point."

**¶25**       The State continued rebuttal closing, stating "[t]he same is true of other areas. If this is a mistake, where was the defendant on that day? Where [are] the alibi witnesses?" Hill again objected, arguing burden shifting, with the court overruling the objection. The State then said "[d]efense just got done talking all about how defendant's family – there is no evidence the defendant's family didn't take something out of the car. Call them. Right? We can talk about that." When Hill again objected, arguing burden shifting, the court responded "[c]ounsel, if you could move on."

**¶26**       This argument, Hill asserts on appeal, was an improper comment on Hill's election not to testify in violation of his Fifth Amendment rights under the United States Constitution, as well as pursuant to Article 2, Section 10 of the Arizona Constitution, and A.R.S. § 13-117(B). Because a "shifting the burden" objection does not preserve the issue of prosecutorial misconduct, review on appeal is for fundamental error. *State v. Rutledge*, 205 Ariz. 7, 13 ¶ 30 (2003). Accordingly, the issue is whether (1) there was error (2) that was fundamental (3) that resulted in prejudice to Hill. *State v. Escalante*, 245 Ariz. 135, 141–42, ¶¶ 18–20 (2018). "Whether a prosecutor's comment is improper depends upon the context in which it was made and whether the jury would naturally and necessarily perceive it to be a comment on the defendant's failure to testify." *Rutledge*, 205 Ariz. at 13 ¶ 33 (citation omitted). Hill has not shown such fundamental error resulting in prejudice here.

**¶27**       Factually, Hill's argument is not supported by the trial record. The State did not comment on Hill's failure to testify. Asking "where [are] the alibi witnesses" does not automatically implicate Hill's failure to testify, given that an alibi defense is more logically presented through other witnesses, rather than through testimony presented by a defendant. Nor did the State otherwise suggest that Hill should have testified. Moreover,

the court correctly, and expressly, instructed the jury that (1) the "[d]efendant need not testify;" (2) the "State must prove guilt beyond a reasonable doubt based on the evidence;" (3) "[y]ou must not conclude that the defendant is likely to be guilty because the defendant did not testify" (4) "[t]he defendant is not required to testify;" (5) "the decision on whether or not to testify is left to the defendant acting with the advice of an attorney" and (6) Hill's decision whether to testify "must not . . . affect your deliberations in any way." Thus, the factual predicate for Hill's argument - that the State commented on the fact that he did not testify - is lacking.

¶28        Nor do the cases Hill cites show the State improperly commented on his decision not to testify. *See Rutledge*, 205 Ariz. at 14 ¶ 38 ("The prosecutor specifically referred to the videotaped interview and did not refer to [defendant's] decision not to testify. Thus, taken in context, the jury would not naturally and necessarily perceive the prosecutor's remark as a comment on [defendant's] failure to testify. There was no fundamental error."); *State v. Dansdill*, 246 Ariz. 593, 606 ¶ 49 (App. 2019) ("[W]e recognize that a segment of the prosecutor's argument - in isolation - could have been understood as directing the jury's attention to the defendant's failure to testify. . . . However, we do not assess arguments in isolation;" in context of closing argument "we decline to characterize an isolated linguistic misstep, in the context of an otherwise wholly proper argument, as error."); *State v. Blackman*, 201 Ariz. 527, 545 ¶¶ 75–76 (App. 2002) ("We do not believe that the prosecutor's remarks in this case constituted an impermissible comment on Defendant's failure to testify. The prosecutor did not refer directly to any defendant's failure to testify. . . . Moreover, the trial court, which is in the best position to assess an argument's effect on the jury, concluded that the argument did not direct the jurors' attention to Defendant's failure to testify. Under these facts, we cannot conclude that the jury would 'naturally and necessarily' view the prosecutor's argument as a comment on Defendant's right to remain silent.") (citation omitted).

¶29        The State's argument resulting in the burden shifting objections addressed the fact that Hill did not present contrary expert testimony regarding fingerprints and did not use the subpoena power to call witnesses of his own. Those arguments, however, were permissible. *See State v. Sarullo*, 219 Ariz. 431, 437 ¶ 24 (App. 2008) (argument regarding a defendant's failure to call expert witnesses is proper); *Dansdill*, 246 Ariz. at 605 ¶¶ 44, 45 ("As the trial court correctly found: 'The prosecution was entitled . . . to rebut defense counsel's closing arguments about missing evidence and witnesses and the quality of the proof,'" adding defendant's equal authority to call witnesses is a proper topic of rebuttal) (citation omitted). On this record, Hill has not shown the challenged arguments,

made during rebuttal closing and viewed in context, constitute burden shifting resulting in fundamental, prejudicial error.

### III. Hill Has Shown No Reversible Error Based on Testimony by Police Officers About Hill's Identity.

¶30　　　At trial, two police officers who responded to the traffic accident and watched the security videos testified that Hill was wearing clothing similar to the person on the videos of the burglaries, and "appeared to be" the same person shown in the videos. Another police officer, who had watched the security videos of the burglaries, testified that the same person was shown in the videos. Other than a foundational objection for one officer, which was properly overruled by the superior court and not challenged on appeal, no objections were made to this testimony. On appeal, however, Hill now argues the court abused its discretion in allowing such testimony, adding that witnesses other than experts "are not to testify to opinions or conclusions."

¶31　　　Hill concedes that lay witnesses can provide relevant, non-expert opinion testimony "rationally based on the witness's perception." Ariz. R. Evid. 701(a). As the authority Hill relies on acknowledges, a "relatively common" example of lay opinion evidence is "identity." McAuliffe & Wahl, *Arizona Practice Law of Evidence* § 701:2 399 & n.18 (4th ed. 2008) (citing cases). Although Hill cites *State v. Reimer* in arguing error, that case involved a police officer improperly testifying about the truthfulness of a witness' prior out-of-court statements. 189 Ariz. 239 (App. 1997). The testimony here did not touch on such topics. On this record, Hill has shown no error in allowing this testimony, let alone fundamental error resulting in prejudice.

### IV. Hill Has Shown No Error in the Superior Court's Denial of His July 2018 Motion for Self-Representation.

¶32　　　In July 2018, when represented by counsel, Hill filed a handwritten motion asking that the court allow him to waive his right to counsel and appoint an attorney to advise him other than his court-appointed counsel. This motion came after the court had determined Hill forfeited his right to self-representation in late 2017. This motion also was the last of Hill's various motions asking for new counsel, for the court to determine counsel, to proceed as a self-represented party or by his counsel asking to withdraw given purported threats Hill had made.

**¶33**      At an August 2018 hearing, the court denied Hill's motion to waive counsel, noting Hill had previously been allowed to represent himself and that, given his behavior, he forfeited that right and his waiver had been revoked in late 2017. Hill's behavior included "expletive ridden outbursts in open court indicating an inability to properly control himself;" swearing at the judge; undertaking contemptable conduct and otherwise not properly conducting himself as a self-represented party. That conduct caused the court to conclude that Hill "forfeited his right to represent himself due to his inability to properly conduct himself before the Court." On appeal Hill claims the court erred in revoking his self-representation, an issue this court reviews for an abuse of discretion. *State v. Gomez*, 231 Ariz. 219, 222 ¶ 8 (2012).

**¶34**      A criminal defendant has a constitutional right to proceed as a self-represented party after knowingly, intelligently and voluntarily electing to do so. *See, e.g., Faretta v. California*, 422 U.S. 806 (1975); *State v. Gunches*, 225 Ariz. 22 (2010); Ariz. R. Crim. P. 6.1(c) & Form 8. That right, however, is limited, lasting "only so long as the defendant 'is able and willing to abide by the rules of procedure and courtroom protocol.'" *State v. Gomez*, 231 Ariz. 219, 222 ¶ 8 (2012) (citations omitted). Similarly, the court "may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct." *Faretta*, 422 U.S. at 834 n.46. "[A] self-represented defendant must not only respect the dignity of the courtroom, but also 'comply with relevant rules of procedure and substantive law.' Thus, a trial court may revoke [self-represented] status for serious violations of court orders even if the conduct occurs outside a courtroom proceeding." *Gomez*, 231 Ariz. at 23 ¶ 15. As a result, "it is within the trial court's discretion to deny a defendant the right to continue his own defense if he acts in such a manner as to seriously disrupt the proceedings, either by refusing to exercise the decorum necessary to ensuring an orderly proceeding or by denying the court due respect." *State v. Whalen*, 192 Ariz. 103, 107 (App. 1997) (citing *State v. Martin*, 102 Ariz. 142 (1967)).

**¶35**      Here, in late 2017, after the court initially accepted Hill's waiver and permitted him to represent himself, Hill repeatedly demonstrated an inability to comply with these standards. In light of the conduct summarized above, the court properly found Hill forfeited his self-representation right. Hill has shown no abuse of discretion in that forfeiture finding. *See, e.g., Gomez*, 231 Ariz. at 23 ¶ 15; *Whalen*, 192 Ariz. at 107.

**¶36**      Hill also argues that the court abused its discretion by relying on that late 2017 ruling when denying Hill's renewed motion for self-representation in August 2018. *State v. Rigsby*, the primary authority Hill relies on in making this argument, rejected a claim on appeal that the trial

court failed to inform the defendant "of the dangers and disadvantages of self-representation." 160 Ariz. 178, 182 (1989). Although *Rigsby* addressed the process required to waive the right to counsel, it does not suggest that self-representation cannot be forfeited based on misconduct. The other cases Hill cites similarly do not support a finding of error here. *See Gunches*, 225 Ariz. at 25 ¶ 12 (concluding superior court "did not abuse its discretion in finding Gunches competent to waive counsel and represent himself"); *State v. Mott*, 162 Ariz. 452, 461 (App. 1989) (rejecting appellate argument that the superior court was "required to revoke defendant's waiver of counsel because of his conduct during the trials").

¶37        "[T]he right to self-representation is not a license for misbehavior in the courtroom." *Mott*, 162 Ariz. at 460 (citing *Faretta*, 422 U.S. at 834 n.26). On the record presented, the superior court reasonably concluded that there was no reason to believe Hill's conduct resulting in the forfeiture of his self-representation right in late 2017 had changed by August 2018. *See id.* (noting that "the trial court is better equipped than an appellate court to decide whether security measures or revocation of the right of self-representation should be invoked to preserve the dignity of the courtroom") (citing authority). Accordingly, Hill has not shown the court abused its discretion in denying his renewed request for self-representation in August 2018.

## CONCLUSION

¶38        Hill's convictions and resulting sentences are affirmed.

_____

**F U R U Y A,** Judge, concurring in part, dissenting in part:

¶39        I concur with the Majority that Hill has shown no abuse of discretion regarding the superior court's denial of his August 2018 request for self-representation. Likewise, I agree that Hill has not shown any reversible error in connection with the court's admission of testimony by the officers as to his identity and concur with the Majority's discussion thereof. Accordingly, I join in Sections III and IV of the Majority's decision.

¶40        I disagree, however, with the Majority's decision as presented in Sections I and II of their decision. The State referenced the use of a fingerprint database, which was not only a fact not in evidence, but also involved a critical matter that was a key concern of the jury, and upon which the case ultimately depended. As such, I respectfully dissent as to Section I.

¶41        As to Section II, in my view, the State's gratuitous reference to the failure to present an alibi was fundamental error, given that nothing in the case supported such an assertion. Nevertheless, although I concur that the error was not reversible because Hill did not show resulting prejudice, I write separately to highlight and condemn this statement for the fundamental error that it is.

## I. The State's Erroneous Arguments During Rebuttal Were Not Harmless

¶42        As the Majority observes, the task at hand is to determine whether the prosecutor's misstatement created a reasonable likelihood of affecting the jury's verdict. *Morris*, 215 Ariz. at 335 ¶ 46. Although prosecutorial error may be harmless if we can find beyond a reasonable doubt that it did not contribute to or affect the verdict, the facts of this case make such a finding problematic for me. *See Hughes*, 193 Ariz. at 80 ¶ 32.

¶43        In multiple key instances, the record demonstrates fingerprint evidence greatly impacted the jury and indicated the jury's particular susceptibility to influence concerning the State's errant statement regarding use of a database. For example, following Ms. Dechant's testimony, the jury posed multiple questions concerning fingerprint evidence for Dechant to answer, including how she obtained Hill's fingerprints, whether she examined fingerprints from all five locations where burglaries had occurred, and whether she used a computer database to assist her in her analysis of the fingerprints. In particular, the question regarding use of a database—which, by stipulation, went unanswered—indicates that this jury was already focusing on such matters. That the prosecutor's misstatement of facts not in evidence later answered this very question can only serve to increase the danger of prejudice.

¶44        Although the State argues, and the Majority concludes, reversal is not warranted because the reference was quick, made briefly during rebuttal argument following two weeks of trial testimony, our supreme court recently recognized that even brief misstatements can carry great prejudice when they are "made in rebuttal argument when the words [are] most impactful." *See State v. Murray*, 250 Ariz. 543, 553, ¶ 37 (2021).

This point seems particularly germane in this case, where the prosecutor's errant statement regarding use of a fingerprint database addressed a matter that was demonstrably within the jury's contemplations.

¶45 Moreover, while its deliberations were underway, the jury submitted a written question asking: "Were the fingerprints 'matched' by a computer system or just by the human eye comparing it?" I believe it significant that this question was posed after the State's improper argument and also after receipt of jury instructions. And though the court attempted to address it by responding to "rely upon the testimony and other evidence admitted during the trial and remember that the lawyers' closing arguments are not evidence," it nevertheless indicates the jury continued to consider the significance a fingerprint database may occupy to the case. The deliberation question itself appears to prove the persistent and infectious impact the prosecutor's misstatement worked here.

¶46 The Majority further reasons that the court's jury instructions were sufficient to ameliorate any deleterious effect that could have been caused by the prosecutor's misstatement. But in addition to the jury's deliberation question discussed above — admittedly answered with another admonishment — the probability of taint from the misstatement seems extraordinarily high. While I agree that we normally presume that jurors follow the instructions they are given, *Newell*, 212 Ariz. at 403 ¶ 68, here, the very nature of the jury's verdict itself calls into question whether the court's instructions were sufficiently effective to prevent unfair consideration of the prosecutor's misstatement of facts not in evidence. The jury only convicted Hill of the two burglaries where fingerprint evidence supported the charges — Chipotle and Verrado Coffee Company. The remaining counts were dismissed, including burglaries of those stores in the immediate vicinity of Chipotle, despite the State's presentation of evidence and argument, which was intended to establish that these burglaries were committed by the same perpetrator. At the very least, these verdicts demonstrate the delicate and tentative balance of the evidence in the case against Hill, which magnifies the danger of prejudice due to the prosecutor's error.

¶47 Moreover, the prosecutor's statements as to use of a database went to the very heart of the case. Given the centrality that fingerprint evidence clearly occupied in this case and the uniquely-positioned impact threatened by the prosecutor's misstatement, on this record, I believe "a reasonable likelihood exists that the [prosecutor's error] could have affected the jury's verdict, thereby denying [the] defendant a fair trial." *Morris*, 215 Ariz. at 335 ¶ 46. Therefore, I would vacate the verdicts and sentences and remand for retrial on this basis.

## II.    The State Improperly Commented On Hill's Failure To Testify During Closing Rebuttal Argument

¶48      During rebuttal closing, the prosecutor argued, "If this [referring to the criminal charges and proceeding in general] is a mistake, where was defendant on that day? Where is [sic] the alibi witnesses?" Citing the need to interpret a prosecutor's arguments in context, the Majority concludes that "[o]n this record, Hill has not shown the challenged arguments, made during rebuttal closing and viewed in context, constitute . . . fundamental error resulting in prejudice." In so concluding, the Majority relies chiefly upon the fact that the prosecutor did not expressly say that Hill should testify or comment specifically on Hill's failure to testify, as well as the court's jury instructions concerning burden of proof as corrective. Respectfully, I disagree that—given the context of the entire case as a whole and the prosecutor's argument more specifically—this statement by the prosecutor was not fundamental error. However, I concur that the argument is nevertheless unavailing because, pursuant to the requirements under *Escalante*, no prejudice can be shown. I write separately to condemn the practice of making gratuitous and unsupported comments on a defendant's failure to present an alibi by the strongest means available to me.

¶49      Though the prosecutor did not directly comment on Hill's failure to testify, both direct and indirect comments made by a prosecutor to a jury on a defendant's failure to testify at trial are impermissible. *Rutledge*, 205 Ariz. at 12, ¶ 26. Taking a prosecutor's comment in context, such comment is considered improper if a jury would naturally and necessarily perceive it to be a comment on the failure of the defendant to testify at trial, *State v. Schrock*, 149 Ariz. 433, 438 (1986), and this includes questions in which the defendant is the only person who could explain or contradict the evidence, *State v. Still*, 119 Ariz. 549, 551 (1978). Thus, the question of fundamental error rests upon whether the prosecutor's comment, taken in context, constitutes a matter that only Hill was competent to explain or contradict.

¶50      The Majority notes, accurately, that the prosecutor's comment about Hill's failure to present an alibi was delivered as part of a larger argument, the general point of which was that Hill failed to call *any* defense witnesses at all, including a rebuttal fingerprint expert or family members. I agree with the Majority it was not error to point out that Hill did not call a rebuttal fingerprint expert or that he did not call any family member to deny removal of items from his impounded vehicle. *Sarullo*, 219 Ariz. at 437 ¶ 24. These statements were not error because Hill placed these matters squarely at issue in his own closing argument and the State was "entitled .

. . to rebut defense counsel's closing arguments about missing evidence and witnesses and the quality of the proof." *Dansdill*, 246 Ariz. at 605 ¶ 44. But such permissible argument on a broader point did not excuse a wholly gratuitous and unfounded reference to Hill's failure to produce an alibi, when alibi was not at issue.

**¶51**      The State argues a lack of error because Hill was not the only person who could have presented evidence as to his whereabouts. However, a review of the record reveals neither witnesses, nor evidence, nor argument, nor disclosures, indeed, absolutely nothing in the entirety of the course of this long case ever raised the issue of alibi, or lack thereof. It was not until his rebuttal closing argument, when the prosecutor called out Hill's failure to offer any witnesses that could account for where he was in the very early-morning hours on the days of the burglaries, that the issue of possible alibi was even mentioned. The prosecutor's argument about failure to establish an alibi was entirely unsupported and unprompted. Without any assertion of this defense and without any evidence whatsoever to even suggest its applicability, the argument was the equivalent of an open invitation to the jury to entertain, in a vacuum, that there hypothetically exists someone, somewhere who could answer this question.[3] This argument was improper because either it invited the jury to speculate as to the existence of such witnesses, *State v. Woods*, 141 Ariz. 446, 455 (1984) ("argument must not be based on matters which were not or could not have been received in evidence."), or worse, it impermissibly suggested the jury consider Hill's own failure to testify as to his whereabouts during the crimes. *Still*, 119 Ariz. at 551.

**¶52**      Our supreme court's decision in *State v. Schrock* acknowledges the problematic nature of referring to a defendant's lack of alibi evidence. In *Schrock*, the State argued a defendant in a murder trial "[had] no alibi for the time of death." 149 Ariz. at 439. Unlike the present case, however, the defendant in *Schrock* had initially alleged that he had an alibi, though he did not develop that theory at trial. Thus, while the *Schrock* Court remarked the prosecutor's comment was "questionable," it ultimately determined "[t]he comment related only to the fact that the defendant in his statements to the officers did not support the alibi defense [the] defendant had pled." *Id.*

---

[3] Reference to Hill's family as potential alibi witnesses is likewise impermissible because no evidence was presented at any point indicating that any of Hill's family were competent to testify about where he was during any of the crimes charged. Without such foundation, none were qualified to serve as potential alibi witnesses.

¶53        Contrary to the defendant in *Schrock*, Hill did not plead an alibi defense of any kind. Therefore, if one is to assume that the jury follows the instruction to decide a case solely based on the evidence presented and to eschew speculation, the prosecutor's questions, "If this is a mistake, where was defendant on that day? Where is [sic] the alibi witnesses?" could *only* be answered by the defendant. Thus, I respectfully disagree with the Majority's conclusion thereon, and believe the prosecutor's gratuitous statement constitutes error. Further, I believe such error was also fundamental.

¶54        Fundamental error goes to the foundation of the case, denies a fundamental right, or is of such magnitude that the defendant could not have possibly received a fair trial. *Escalante*, 245 Ariz. at 140, ¶¶ 13, 16. An error denies an essential right if it "deprives the defendant of a constitutional or statutory right necessary to establish a viable defense or rebut the prosecution's case." *Escalante*, 245 Ariz. at 141, ¶ 19.

¶55        Any comment made by a prosecutor regarding a defendant's failure to testify may violate the Fifth Amendment. *Griffin v. California*, 380 U.S. 609, 615 (1965). Absent contextual matters that would otherwise excuse failure to observe a defendant's Fifth Amendment rights, "[n]ormally such a comment [would] constitute[] fundamental error." *State v. Arredondo*, 111 Ariz. 141, 143 (1974). Again, we look to "whether the jury would naturally and necessarily perceive it to be a comment on the defendant's failure to testify." *Rutledge*, 205 Ariz. at 13, ¶ 33. Further, "[t]o be constitutionally proscribed, a comment must be adverse; that is, it must support an unfavorable inference against the defendant and, therefore, operate as a penalty imposed for exercising a constitutional privilege." *State v. Ramos*, 235 Ariz. 230, 235, ¶ 13 (App. 2014).

¶56        Here, the prosecutor's statement directly called into question Hill's innocence by initiating the argument with, "*If this is a mistake*, where was defendant on that day?" (Emphasis added.) On the evidence in this record, Hill was the only individual who the jury knew to be competent to explain or contradict the prosecutor's statement. *See Still*, 119 Ariz. at 551. Hill's silence was therefore used as a penalty to draw a negative inference against him that the criminal proceedings had been no mistake. Thus, the prosecutor's statement here was fundamental error.

¶57        To be reversible, however, Hill must also establish that this fundamental error prejudiced him. *Escalante*, 245 Ariz. at 142, ¶ 21. The applicable inquiry is whether "without the error, a reasonable jury could have reached a different result, even if substantial evidence of guilt exists." *Id.* at 144, ¶ 34. Here, fundamental error notwithstanding, I believe under

*Escalante*, Hill cannot demonstrate the required showing of prejudice. As required under an *Escalante* prejudice analysis, if one disregards all evidence related to the alibi question—consisting, as it does, exclusively of the prosecutor's prohibited remark—a reasonable jury could still find Hill guilty. As the Majority also discussed, this conclusion is further bolstered by the numerous jury instructions the court delivered on the State's burden of proof, the presumption of the Defendant's innocence, and the specific observance of Defendant's Fifth Amendment rights. Finally, the jury's decision to convict only on those counts associated with locations where fingerprint evidence was found to implicate Hill also implies that the prosecutor's errant statement was not determinative.

¶58        Regardless, the State is cautioned that it is inappropriate to make gratuitous comments on a defendant's lack of alibi, where it has not been put in issue by the defendant and the evidence does not support such an argument.

